19540.   DAVIS v. MILLER *et al.*

ARGUED NOVEMBER 14, 1956—DECIDED JANUARY 14, 1957—REHEARING
DENIED FEBRUARY 13, 1957.

*Louis A. Peacock,* for plaintiff in error.
*Durden & Durden,* contra.

HEAD, Justice. W. C. Miller, Jr., and others, filed a petition
to enjoin W. L. G. Davis from constructing a filling station on
described property. Upon hearing, an interlocutory injunction
was granted, and the exception is to that judgment.

The material facts pertaining to the controlling question in the
present case are without dispute. The predecessor in title of the
plaintiffs and the defendant developed Whispering Pines Subdi-
vision, and had recorded in the office of the clerk of the superior
court certain restrictions upon the development and use of the
lots contained therein. In the recorded restrictions the developer
retained the right to make exceptions from the restrictions, and
subsequently conveyed to the defendant three lots free of certain
restrictions.

It is the general rule that the owner of land has the right to use it for any lawful purpose, and restrictions upon its use must be clearly established and strictly construed. *Lawson* v. *Lewis*, 205 *Ga.* 227 (3) (52 S. E. 2d 859); *Jordan* v. *Orr*, 209 *Ga.* 161, 163 (1a) (71 S. E. 2d 206). Restrictive covenants will be construed to carry out the intention of the parties, if that intention can be ascertained from a consideration of the whole instrument. *Atlanta, Knoxville &c. Ry. Co.* v. *McKinney*, 124 *Ga.* 929, 930 (3) (53 S. E. 701, 6 L. R. A. (NS) 436, 110 Am. St. R. 215); *Smith* v. *Gulf Refining Co.*, 162 *Ga.* 191, 194 (134 S. E. 446, 51 A. L. R. 1323); *Dooley* v. *Savannah Bank &c. Co.*, 199 *Ga.* 353, 357 (34 S. E. 2d 522).

In the present case, the dispute is centered on the right to make exceptions as contained in paragraph 8 of the restrictions. In construing the language of paragraph 8, little aid can be procured from a consideration of the restrictions in their entirety. It is stated in paragraph 1 that all of the lots in the subdivision, from 1 to 68 inclusive, shall be known and used as residential lots only, for the construction of one detached single-family dwelling, not to exceed two stories in height. It clearly appears, however, from other restrictions imposed, that a one-family dwelling could not be placed upon lots 1 through 6, fronting on Slappey Drive, including the three lots owned by the defendant. The copy of the plat attached as an exhibit shows that each of the lots 1 through 6 is less than 70 feet in width and less than 167 feet in depth. In paragraph 4 of the restrictions, it is provided that no residential structure can be erected on any lot that has an area of less than 15,000 square feet, and a width of less than 75 feet. None of the defendant's lots has an area of 15,000 square feet, nor is any of the lots 75 feet in width. In paragraph 2 of the restrictions, it is said that the main dwelling house must not be less than 40 feet from the front line "on all lots that have a depth of 200 feet or more," which indicates that the developer of the subdivision knew at the time the restrictions were imposed that there were lots of less than 200 feet in depth. Certainly he could and should have known from an examination of the plat that the six lots fronting on Slappey Drive were not 75 feet in width and were not, therefore, under the restrictions imposed, to be used for residential purposes. The above facts, however, are germane

solely as an indication of the apparent conflicts in the restrictions, and the absence of clear, unequivocal language which might aid in determining the extent of the right to make exceptions retained by the grantor in paragraph 8.

Paragraph 8 of the restrictions provides that no owner of any lot "shall or will manufacture or sell or cause or permit to be manufactured or sold on any lot or any portion of the premises or lots conveyed, any goods or merchandise of any kind *or use the same for any business purpose except where expressly permitted in writing by the parties of the first part,* . . . and will not manufacture or sell or permit to be manufactured or sold intoxicating liquors on said premises and will not carry nor permit any matter or thing which shall be a nuisance, unwholesome or offensive to the neighborhood or neighbors upon any of said lots." (Italics ours.)

Clearly the words "except where expressly permitted in writing by the parties of the first part," retain to the grantor the right to make exceptions of the kind and character preceding this phrase. The plaintiffs contend "that section 8 of the restrictive covenants is a reservation to permit, by written instrument, a use of structures erected on lots in Whispering Pines Subdivision for other than residential uses, but that there is no reserved authority to permit a structure, other than a family dwelling to be erected." If the words "or use the same for any business purpose" had been omitted, the plaintiffs' contention could not be sustained, for the right to make exception applies to "any goods or merchandise of any kind," which, of course, includes gasoline generally sold at retail only at gasoline filling stations. The right to make exception as to "any goods or merchandise of any kind," or use the lots "for any business purpose," is a very extensive exception. While the two words "business purpose" do not appear to have been generally defined, the word "business" embraces everything about which a person can be employed. Black's Law Dictionary (3rd ed.), p. 260; 1 Bouvier's Law Dictionary (3rd rev.), p. 406. The word "purpose" as used in connection with the word "business" means the object, effect, or result, aimed at, intended, or attained. Webster's New International Dictionary (2d ed.), p. 2018. The words "business purpose" are therefore broad enough to include every type of business structure or building not prohibited by law.

The exception in paragraph 8 does not apply to the manufacture or sale of intoxicating liquors, or give permission to carry on anything "which shall be a nuisance, unwholesome or offensive to the neighborhood or neighbors upon any of said lots." This was recognized by the person for whose benefit the restrictions were removed, for, in the instrument removing the restrictions as to lots now belonging to the defendant, it is said that as a part of the consideration for the removal of the restrictions, a liquor store or business of that type which might be objectionable to other lot owners would not be erected upon the property.

The grantor retained the right to make exceptions in writing to the restrictions imposed, and the retention of such a right is valid. *Thompson* v. *Glenwood Community Club,* 191 *Ga.* 196 (12 S. E. 2d 623). The right to make exceptions being included in the instrument imposing the restrictions in the first instance, and the plaintiffs having purchased with notice of the grantor's right to make exceptions, they can not complain when exceptions are made pursuant to powers retained.

The testimony offered on behalf of the plaintiffs is wholly insufficient to establish that the erection of a filling station on the lots of the defendant would constitute a nuisance. A filling station is not a nuisance per se. *Standard Oil Co.* v. *Kahn,* 165 *Ga.* 575 (141 S. E. 643); *Tucker* v. *City of Ocilla,* 209 *Ga.* 278 (71 S. E. 2d 652). In *Standard Oil Co.* v. *Kahn,* supra, the petition alleged more to sustain the contention that the filling station would be a nuisance than appears from the testimony of the plaintiffs in the present case; and in that case this court, in a unanimous decision, said that the trial court erred in overruling the general demurrer thereto. In so far as the plaintiffs may rely upon the words "unwholesome or offensive" to the neighborhood, they are included within the definition of a nuisance.

The plaintiffs allege that the damage which will be done to their homes and property can not be computed in dollars, and is therefore irreparable. Where the consequences of a nuisance about to be erected are irreparable in damages, and such consequences are not merely possible, but to a reasonable degree certain, equity will interfere to arrest a nuisance before it is completed. Code § 72-204. However, the mere anticipation of injury from the operation of a lawful business will not authorize

the grant of an injunction. *Richmond Cotton Oil Co. v. Castellaw,* 134 *Ga.* 472 (4) (67 S. E. 1126); *Barton* v. *Rogers,* 166 *Ga.* 802 (3) (144 S. E. 248); *Atlantic Refining Co.* v. *Farrar,* 171 *Ga.* 371, 374 (155 S. E. 327); *Thomoson* v. *Sammon,* 174 *Ga.* 751, 752 (3) (164 S. E. 45); *Elder* v. *City of Winder,* 201 *Ga.* 511 (40 S. E. 2d 659); *Ott* v. *Raburn,* 204 *Ga.* 198 (48 S. E. 2d 871).

In the present case the trial judge was not vested with any discretion to grant an interlocutory injunction, since discretion is limited to cases where there is a conflict in the evidence. Where there is no material conflict in the evidence, the applicable rules of law can not be avoided on the basis of discretion.

*Judgment reversed. All the Justices concur.*

## CORRECTIONS.

Page 26, line 6 from top: Change "Code § 83-119" to "Code Ch. 72-2."

Page 219, last line of page: Strike "not" before "sufficient."

Page 245, line 19 from bottom: Change "with a recommendation" to "without a recommendation."

Page 546, line 4 from top: Change "intestate" to "testate."