### 34502. CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS v. STATHAM et al.

BOWLES, Justice.

Appellees, property owners in Cumberland Subdivision, Spalding County, Georgia, brought suit against the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, hereinafter appellant, seeking to enjoin its construction of a church building in Cumberland Subdivision. They contend that the land in that subdivision is subject to certain recorded restrictive covenants placed on it by the original grantor, John R. Carlisle, and that the building of the church violates these covenants. The trial court found that the building of the church violated the restrictive covenants and issued a permanent injunction prohibiting appellant from erecting any structure not designated and used for single family residential purposes and which did not contain 1,600 square feet of heated living area.

The only covenants relevant to this case are as follows:

"2. No building shall be constructed which does not contain a minimum of 1,600 square feet of heated living area.

"7. No lot shall be divided in any manner but shall

remain intact as a single family residential unit, except upon the express written consent of John R. Carlisle.

"10. Exception may be had from these protective covenants by the express written consent of all persons owning a lot covered hereby but exception hereto shall not waive the force and effect of any protective covenant as to future encroachments, which shall also require permission in the same manner."

The trial court found as a matter of fact that the proposed church did not contain *any* living area and, therefore, its construction violated covenant No. 2 which requires 1,600 square feet of heated living area. The trial court concluded as a matter of law that in covenant No. 7, the grantor retained only the authority to allow further subdivision of the lots, but not the authority to waive the use of the lots as single family residence lots and that, therefore, the building of a church violated this covenant as well since restriction No. 10, the general waiver provision, had not been met.

In determining whether or not the trial court erred in enjoining the appellants, we must keep several important principles in mind:

(1) "It is the general rule that the owner of land has the right to use it for any lawful purpose, and restrictions upon its use must be clearly established and strictly construed." *Davis v. Miller,* 212 Ga. 836, 837 (96 SE2d 498) (1957). Doubt as to restrictions and use will be construed in favor of the grantee. *Voyles v. Knight,* 220 Ga. 305 (138 SE2d 565) (1964).

(2) "Restrictive covenants will be construed to carry out the intention of the parties, if that intention can be ascertained from a consideration of the whole instrument." *Davis v. Miller,* supra, at 837.

(3) The exercise of discretion by the lower court in granting an injunction will not be interfered with in the absence of manifest abuse. *Lawrence v. Harding,* 226 Ga. 148 (173 SE2d 197) (1969).

(4) Discretion is limited to cases in which there is a conflict in the evidence. "Where there is no material conflict in the evidence, the applicable rules of law cannot be avoided on the basis of discretion." *Davis v. Miller,* supra, at 840.

In construing covenant No. 7, the trial court had no evidential conflicts to consider but simply made his decision as a matter of law. We conclude that his construction of that covenant was erroneous as a matter of law. There is no basis for breaking that covenant into two parts and holding that the grantor could waive one part and not the other. It is plain that the grantor was reserving in himself the right to waive covenant No. 7 in its entirety and this he did in his deed to appellant.[1] We therefore need not consider whether or not it was error to exclude the grantor's testimony as to his intention in drafting the covenants. Since the grantor waived the right to insist that appellant use its lots for a single family residential unit, the trial court erred in enjoining appellants from erecting any structure not designated and used for single family residential purposes.

With reference to covenant No. 2, the trial court found that the proposed church building did not contain any "living area." Since this determination was factual in nature, it can be overturned only by a showing of manifest abuse of discretion. The burden is on the appellant to show error in the trial court's ruling. Appellant has not even attempted to show that this finding was erroneous much less how it constituted an abuse of discretion. Rather appellant appears to be relying on its erroneous belief that all covenants were subject to the waiver provision of covenant No. 7. It is plain from examination of the record that the trial court interpreted "living area" to mean an area in which people reside. Appellant has not argued that such interpretation is erroneous and it does not appear to be the result of a manifest abuse of discretion. Therefore, that interpretation is binding on this appellant. Appellant is permitted within the restrictive covenants to build a church building but that building

---

[1]It is not clear from examination of all the restrictive covenants that only residential uses were to be permitted in this subdivision. The term "building" is used throughout where the word "residence" could have been used had it been intended.

must contain 1,600 square feet of heated living area in which someone resides.

Appellant's enumerations of error relating to a different church possibly being built in the same subdivision need not be considered. Whether or not another church is being built and whether or not anyone is seeking to enjoin such building is not relevant to this case. Allegations of prejudice against this appellant church are unfounded since the appellee questioned, testified positively that he would seek to enjoin the construction of *any* church in his subdivision.[2]

*Judgment affirmed in part, reversed in part. All the Justices concur, except Jordan, J., who concurs in the judgment only, and Nichols, C. J., Hall and Hill, JJ., who dissent.*

SUBMITTED JANUARY 26, 1979 — DECIDED APRIL 5, 1979.

*Fritz Albrecht,* for appellant.
*Beck, Goddard, Owen & Murray, Richard L. Collier,* for appellees.

NICHOLS, Chief Justice, dissenting.

I must disagree with the majority's reasoning and judgment regarding the second covenant. The second covenant provides: "No building shall be constructed which does not contain a minimum of 1,600 square feet of heated living area." The trial court held as a matter of law that "living area" means an area in which someone resides and found as a matter of fact that the proposed church would not contain the requisite number of square feet of area in which someone would reside. The majority affirms, holding that the trial court did not abuse its discretion as to the finding of fact and that the trial court's construction of the covenant is binding upon the appellant because the appellant has not argued that it is erroneous.

The appellant's brief cites legal authorities, makes

----

[2]He testified that the other church being built was not in his subdivision.

legal arguments, then concludes that, "In view of the foregoing we respectfully submit that the lower court erred in the following particulars: (a) in over ruling [sic] appellants [sic] motion to dismiss; . . . (d) in misinterpreting the restrictive *covenants* concerned . . ." (Emphasis supplied.)

I am of the opinion that the appellant's brief is minimally sufficient to assert that the second covenant as well as the seventh covenant was misconstrued as a matter of law by the trial court. Hence, I reach the issue of the legal construction by the trial court of the second covenant.

We must construe all, not just part, of the words used by the grantor. *Davis v. Miller,* 212 Ga. 836, 837 (96 SE2d 498) (1957). The second covenant requires that a building contain a certain amount of "heated living area." The trial court merely construed the last two of those three words. The grantor did not use the word "home," "house," "residence," or such similar term denoting a place where people reside. He used the word "building." As the majority concedes, a church is as much a "building" as is a house. Neither did the grantor expressly require that someone reside in the 1,600 square feet of area. The trial court and the majority of this court read into the words "living area" two requirements: first, that the area be residential in nature, and second, that someone reside there. The grantor imposed no such limitations. The words "heated living area" used in reference to a church building just as readily can mean heated area occupied by persons, such as the pastor and members of the church, as distinguished from heated area occupied by inanimate objects, such as the building's heating, cooling and electrical systems. The words "heated living area" when applied to a church building reasonably can be used to differentiate between the sanctuary, the education and recreation rooms, and the pastor's office, for examples, on the one hand, and the heated storage and furnace rooms, on the other hand, since few church buildings in Georgia have residential apartments containing 1,600 square feet of area.

This court should resolve in favor of the grantee (*Voyles v. Knight,* 220 Ga. 305 (138 SE2d 565) (1964)) all

doubt as to the uses permitted since it is by no means "clearly established" by the language used by the grantor when it is "strictly construed" against him (*Davis v. Miller,* supra) that he meant to permit use of the subdivision land by a church only if the church building contained 1,600 square feet of heated area in which someone resides. The result of the majority's decision is to turn the rules of construction upside down by construing the language strictly against the grantee rather than in its favor. Accordingly, I must dissent.

I am authorized to state that Justice Hall and Justice Hill join me in this dissent.