S95A0644. SAUNDERS et al. v. THORN WOODE
PARTNERSHIP, L.P. et al.
(462 SE2d 135)

BENHAM, Chief Justice.

Appellants are homeowners in the Thorn Woode subdivision of DeKalb County. They filed suit against Thorn Woode Partnership (hereinafter "Thorn Woode"), a limited partnership, and its general partners, alleging that Thorn Woode had built 41 units in the subdivision in violation of the covenants set forth in the recorded "Declaration of Protective Covenants and Restrictions." When the trial court granted summary judgment in favor of appellees, this appeal followed.

Sections 2.01 and 2.02 of the declaration of covenants state

[n]o improvements shall be erected or placed on any Lot within the Property . . . until a site plan together with construction plans and specifications . . . have been submitted to and approved in writing by [the homeowners' association] with respect to (a) conformity and harmony of external design with existing or other proposed structures upon the Property. . . . The approval of said plans and specifications shall be at the sole discretion of the [homeowners' association], however [the association] shall not unreasonably withhold approval of any such . . . plans. . . .

The declaration of covenants also provided that the owner of each lot within the subdivision had one delegate/vote in the homeowners' association, and that a person or entity owning more than one lot had one delegate/vote in the association for each lot owned.

It is undisputed that Thorn Woode violated the restrictive covenant by building the 41 units without submitting its construction plans to the homeowners' association and receiving written approval that the external design of the planned structures conformed with and was in harmony with the 24 pre-existing townhomes. Concluding that Thorn Woode's failure to submit its plans before construction meant that the issue could not now be decided as a matter of law, the trial court ordered Thorn Woode to submit the issue of design conformance to the homeowners' association after the fact. See *Prime Bank v. Galler,* 263 Ga. 286 (430 SE2d 735) (1993) (trial court should find "the least oppressive means of remedying the violation"). At a

March 1994 meeting of the association, it was determined by a vote of 41-23 that the design of the 41 units was in conformity with the design of the 24 units previously existing. Recognizing that Thorn Woode had violated the covenants by failing to seek and obtain pre-construction approval of its plans, but that the homeowners' association had now approved the design of the new units, the trial court determined that appellants had achieved the only relief to which they were entitled — submission of plans to, and approval as to design conformance by, the homeowners' association. That being so, the trial court concluded that appellees were entitled to summary judgment.

1. Appellants maintain that the trial court's reliance on the post-construction association approval was improper. We disagree. Acting as a chancellor in equity, the trial court did not abuse its discretion when it carefully considered "the conveniences of the parties" and fashioned "the least oppressive means of remedying the violation." *Prime Bank v. Galler*, supra, Division 4.

2. Appellants complain that summary judgment should not have been entered because there exists a jury question on the issue of whether the design of the 41 units was in conformity with the previously built units. By making such an assertion, appellants suggest, in effect, that the association vote on the issue of design conformity is of no consequence and that they are entitled to de novo resolution of the issue by the judicial system. Again, we must disagree. Appellants' right to question design conformity stems solely from the "Declaration of Protective Covenants and Restrictions." But for the declaration, appellants would not have the authority to take issue with the design of any residence in the subdivision, since "[i]t is the general rule that the owner of land has the right to use it for any lawful purpose. . . ." *Corp. of the Presiding Bishop &c. v. Statham*, 243 Ga. 448, 449 (254 SE2d 833) (1979). See also *Law v. Lowe*, 191 Ga. App. 434, 435 (382 SE2d 118) (1989). Where, as here, the declaration delegates decision-making authority to a group and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious. See *Winslette v. Keeler*, 220 Ga. 100 (2) (137 SE2d 288) (1964). See also Hyatt, Condominium and Homeowner Association Practice: Community Association Law, § 3.02 (2d ed.) (1988); *Palmetto Dunes Resort v. Brown*, 336 SE2d 15, 19 (S.C. App. 1985). Appellants did not voice allegations of improper procedure or decisions made arbitrarily, capriciously or in bad faith. Since the homeowners' association, vested with the discretion given it by the declaration, resolved the issue of design conformity against appellants, there is no factual issue concerning the conformity of the new units for resolution by a jury, and the trial court did not err in entering summary judg-

ment in favor of the developer of the new units.

3. Lastly, appellants assert that the trial court should order the modification or destruction of buildings found by a jury to be nonconforming. As there has been no finding of non-conformity, appellants' proposed remedy is premature and not properly before this court.

*Judgment affirmed. All the Justices concur, except Sears, J., who dissents.*

SEARS, Justice, dissenting.

This case presents the dilemma of fashioning an appropriate equitable remedy for Thorn Woode's failure to submit its construction plans for approval by the association before Thorn Woode built its 41 units. The trial court found it equitable to permit Thorn Woode to vote for approval of its design after it had incurred the expense of building the units. The majority now approves that remedy as equitable, citing *Prime Bank v. Galler*, 263 Ga. 286 (430 SE2d 735) (1993), for the proposition that a trial court should find the least oppressive means of remedying a defendant's violation. The majority, however, omits an important aspect of the foregoing principle. Fully stated, the principle is that a trial court should find the least oppressive means of remedying the violation *"while still protecting the valuable rights of the plaintiff."* (Emphasis supplied.) *Prime Bank*, 263 Ga. at 289. Permitting Thorn Woode to submit the design for approval after it built the units strikes me as being particularly inequitable, as it fails to protect the valuable right of the appellants to have the vote taken *before* construction, and permits Thorn Woode to remedy its own wrong in a manner detrimental to the appellants. Although I recognize that Thorn Woode could have voted in favor of design conformance on a vote taken before it built the units, the appellants would have had significant leverage at that point to obtain concessions on the designs or to have them changed completely. After Thorn Woode incurred huge expenses building the units, all hope of that disappeared, and the vote ordered by the trial court was a pointless exercise, the result being known to all beforehand. In sum, permitting the vote to be taken after construction fails to protect the valuable right of the appellants to have it done before construction. Moreover, the remedy approved by the majority is unnecessary given that the trial court had options that were not oppressive to Thorn Woode but yet were fair to the appellants. For instance, the court could have appointed an independent factfinder to determine the issue of design compliance or could have done so itself. If it were ultimately determined that the 41 units did comply, then the case would be at an end. If it were ultimately determined that the 41 units were not in compliance, then the court would have to consider various equitable reme-

dies, including whether renovations should be ordered to bring the 41 units into total or partial compliance. As a part of this latter determination, the court could consider whether the appellants complained timely about Thorn Woode's failure to submit its plan for design approval.

I have one further concern with the majority opinion. It cites *Winslette v. Keeler*, 220 Ga. 100 (2) (137 SE2d 288) (1964), for the proposition that the appellants are not entitled to judicial review of the design conformance decision of the association based on the allegation that the design was not in fact in conformance. *Winslette*, however, supports the appellant's right to judicial review. *Winslette* is the reverse of this case in that the appellant had submitted a design that he alleged conformed to the applicable covenants, and the appellee had voted not to approve the design. We held that the appellant was entitled to judicial review of the design issue.

> Accepting the allegations as true, which must be done on general demurrer, the plaintiff has submitted plans for the building of a residence on his lot which meet all the requirements of the covenant and the defendant refuses to approve them. This being accepted as true, the refusal of the defendant to approve the plans submitted would be unreasonable, arbitrary, and capricious as alleged.

Id. at 103.

In this case the appellants have alleged that the appellees have approved a design that does not conform to the covenants. Under the reasoning of *Winslette*, the approval of that design would then be "unreasonable, arbitrary, and capricious," id., and the appellants are entitled to judicial review of that approval.

For the foregoing reasons, I dissent.

DECIDED OCTOBER 2, 1995.

*Ronald S. Stevens, Michelle F. Bergman, Randy S. Sabatini*, for appellants.

*Benjamin P. Erlitz*, for appellees.