**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 20, 2019**

# In the Court of Appeals of Georgia

A18A2121. ABDULLAH v. WINSLOW AT EAGLE'S LANDING
    HOMEOWNERS ASSOCIATION, INC.

RICKMAN, Judge.

Askia K. Abdullah filed suit seeking a declaration that his homeowners' association ("the association") did not have the right to fine him for failing to seek prior approval to establish a flower bed on his property. The association counterclaimed for charges accumulated by Abdullah, including initiation fees, assessments, fines of $100 per week arising from the flower bed issue, and attorney fees. Eventually, the trial court denied Abdullah's request for a declaratory judgment and granted summary judgment in favor of the association. Abudullah appeals, contending that the superior court erred by granting summary judgment and awarding attorney fees. For the reasons shown below, we reverse.

Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." (Citations and punctuation omitted.) *Smith v. Found*, 343 Ga. App. 816, 817 (806 SE2d 287) (2017). "The evidence on summary judgment includes the facts alleged in [Abdullah's] verified complaint that are within [his] personal knowledge." *Zhong v. PNC Bank*, 345 Ga. App. 135, 145 (3) (b) (i), n. 3 (812 SE2d 514) (2018).

So construed the evidence of record shows that in July 2014, Abdullah purchased residential real estate in Winslow at Eagle's Landing and that his ownership and use of the property was governed by the association under a declaration of covenants and restrictions ("the declaration"). Prior to August 1, 2016, Abdullah received a letter from the association concerning the lack of grass on some portion of his property. He responded that the area was not conducive to grass because of an extensive root system, and he therefore built a "flower bed and filled it with soil that would accommodate plant growth." He urged the association to intervene if they saw fit:

2

There is no other way anything will grow in that area. I urge you to come out and examine the area. And, if you can grow grass in the area I will gladly remove the flower bed. I am also open to any other suggestion you may have.

Abdullah admits that he did not seek the approval from the association before establishing the flower bed.

Abdullah did not receive a response to his letter. Instead, in early August 2016, the association began to assess Abdullah $100 per week for failure to obtain prior approval for installation of the flower bed. In December, Abdullah submitted to the association a proper request for approval of the flower bed, and the association approved it on December 30, 2016. Nevertheless, the association thereafter sought to recover the accumulated weekly fines for a violation entitled "Unapproved Home Improvement . . . for unapproved landscaping for flower bed."

Abdullah then filed this declaratory judgment action, seeking an order declaring that the $100 payments were void as being contrary to the declaration and, therefore, arbitrary and capricious. The association answered and counterclaimed for all unpaid "initiation fees, assessments and other charges" owed by Abdullah as well as attorney fees incurred in collecting the unpaid charges. As stated above, the trial court denied Abdullah's motion for a declaration that the fines were void, and it

granted the association's motion for summary judgment in the full amount of its claims and attorney fees authorized by the declaration. In sum, the trial court granted judgment in favor of the association in the following amounts: principal of $2,570; interest of $30; and attorney fees of $1,971.45.

1. As a preliminary matter, the association contends that we do not have jurisdiction for this appeal because Abdullah filed a direct appeal whereas a discretionary application was required given that the superior court awarded the association less than $10,000.

OCGA § 5-6-34 (a) provides for appeals from "[a]ll final judgments . . . except as provided in Code Section 5-6-35[,]" such as OCGA § 5-6-35 (a) (6), which requires an application for appeal in "*all actions for damages* in which the judgment is $10,000.00 or less." (Emphasis supplied.) The question presented is whether Abdullah was entitled to a direct appeal given that the trial court dismissed his declaratory judgment in full even though it also awarded the association damages of less than $10,000.

The answer is controlled adversely to the association by *Brown v. Assocs. Fin. Svcs. Corp.*, 255 Ga. 457 (339 SE2d 590) (1986), and *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391 (469 SE2d 469) (1996). Both cases conclude that where the

4

original action is not one for damages, OCGA § 5-6-35 (a) (6) does not apply. See *Brown*, 255 Ga. at 457 (OCGA § 5-6-35 (a) (6) does not apply to a judgment where "the action and judgment are for a grant of possession and not an action or a judgment for damages"); *Kelly*, 220 Ga. App. at 391 (even though amount of trial court's award was less than $10,000, "an action on a lien is not an action for damages necessitating a discretionary appeal under OCGA § 5-6-35 (a) (6)"); see also *Anderson v. Laureano*, 342 Ga. App. 888, 888 (805 SE2d 636) (2017). Thus, here, where Abdullah's action was for declaratory judgment, not damages, OCGA § 5-6-35 (a) (6) does not apply, and Abdullah had a right to a direct appeal from a final judgment.

2. Abdullah contends the trial court erred by granting summary judgment in favor of the association because the declaration of covenants did not authorize fines under the circumstances. A declaration of covenants is a contract and we therefore apply the normal rules of contract construction de novo. *Homelife on Glynco, LLC v. Gateway Ctr. Commercial Assn.*, 348 Ga. App. 97(1) (819 SE2d 723) (2018). Under those rules,

> The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. To determine the intent of the parties, all the contract terms must be considered together in

5

arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. When the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation the language used must be afforded its literal meaning and plain ordinary words given their usual significance.

(Citation and punctuation omitted.) *Crabapple Lake Parc Community Assn. v. Circeo*, 325 Ga. App. 101, 104-105 (1) (a) (751 SE2d 866) (2013); see also *S-D RIRA, LLC v. Outback Property Owners' Assn.*, 330 Ga. App. 442, 453 (3) (c) (765 SE2d 498) (2014) ("If the manifest intent of the parties can be ascertained from the covenants as a whole, no ambiguity exists, and there is no need for judicial construction.") (citation and punctuation omitted).

Several provisions of the declaration are relevant. First, the parties agree that Abdullah violated Article V § 3 (A), which provides that "[p]rior written approval of the committee is required before construction commences on any building, structure or other improvement on all Lots and other portions of the Properties."[1]

---

[1] "Improvements" are defined as including "construction of any kind," including "hedges" and "mass plantings." Furthermore, landscaping plans must also be approved by association. And Abdullah conceded below that the flower bed constituted an improvement under the declaration, and he admitted that he did not obtain approval in advance.

Article XII of the declaration provides that each owner agrees to pay the association annual assessments, special assessments, and "specific assessments . . . which are established pursuant to the terms of this Declaration, including but not limited to, *reasonable fines as may be imposed in accordance with the terms of this Declaration*." (Emphasis supplied.) All such charges "shall be a charge and a continuing lien upon" the relevant owner's lot. And Article VII of the declaration provides for enforcement of all covenants in the declaration, including any liens created thereby:

> Enforcement of these Protective Covenants shall be by any proceeding at law or in equity against any person or persons violating or attempting to violate any covenant or restriction, either to restrain or to recover damages, and against the land to enforce any lien created by the covenants.

Finally, reasonable attorney fees are authorized in any proceeding by the association "to enforce or restrain the violation" of the covenants.

Abdullah's primary argument is that contrary to the declaration's authorization of reasonable fines "as may be imposed in accordance with the terms of this Declaration," the declaration in fact imposes no fines. Indeed, Article V of the declaration, which includes the covenant that Abdullah violated, itemizes eight other

covenants regarding buildings, structures, and other improvements, and numerous other covenants that pertain to building setback lines, governmental rules, temporary structures, utility connections and television antennas, landscaping, trees and other vegetation, air conditioning compressors and other mechanical equipment, and mail boxes.

In only two out of approximately twenty-seven such covenants does the covenant itself provide for any penalty or other action by the association in the event of a violation. Specifically, the covenants for landscape installation and landscape maintenance both provide that in the event that installation or maintenance of landscaping is not completed in a specified timely manner, the association has the right to enter upon the property of an owner, install or maintain the landscaping, and charge the owner for the relevant costs plus an overhead allowance. Neither those two covenants nor any of the other restrictive covenants mentioned above imposes fines at all. We therefore conclude that the association has failed to establish as a matter of law that the fines imposed against Abdullah were imposed in accordance with the terms of the declaration.

In response, the association cites *Spratt v. Henderson Mill Condo. Assn.*, 224 Ga. App. 761, 764 (2) (481 SE2d 879) (1997), but that case primarily decided that an

association's fine was "neither a liquidated damages award nor an unenforceable penalty." And it found that the declaration in that case specifically provided that the board was authorized "to make and enforce reasonable rules and regulations and to fine, in accordance with the Declaration and By–Laws, in order to enforce the [leasing restrictions at issue]." See Id. The Court, however, did not explain whether the board in fact made rules and regulations pursuant to that authority or discuss or determine whether the relevant fines were established "in accordance with the Declaration and By-Laws." Id. Furthermore, in that case, this Court noted that the lot owner had been made aware of the $25 per day fine before she signed the lease. Id. Here, there is no evidence that the association implemented any rules or regulations or informed the lot owners, let alone Abdullah, of its practice of imposing $100-per-week fines, and there is certainly nothing in the declaration about it. And the simple fact that the association has a ten-year practice of levying fines against all owners at the rate of $100 per week per covenant violation does not mean that such fines were properly implemented.

Moreover, the development in this case is governed by the Georgia Property Owners' Association Act, and the applicable Code section of that act provides that "[i]f and to the extent provided in the instrument, the association shall be empowered

to impose and assess fines." OCGA § 44-3-223. Again, the relevant declaration does not specifically impose any fines or provide for "the extent" to which such fines can be imposed. The same Code section provides that lot owners "shall comply with any reasonable rules or regulations adopted by the association pursuant to the instrument which have been provided to the lot owners and with the lawful provisions of the bylaws of the association." Id. But here, no such rules, regulations, or by-laws are in the record, nor has it been shown that any such items were provided to the lot owners. Finally, without any indication of what fines apply to what violations and whether even the most insignificant violation of the covenants can result in a weekly $100 fine, we are unable to assess "whether the exercise of [] authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious." *Saunders v. Thorn Woode Partnership L.P.*, 265 Ga. 703, 704 (2) (462 SE2d 135) (1995).

In short, based on the limited evidence in the record, we conclude that the association's practice of imposing a $100-per-week fine for Abdullah's failure to obtain pre-approval of his flower bed is not supported by the terms of the declaration nor in compliance with OCGA § 43-3-223. The trial court therefore erred by granting

10

summary judgment to the association on its claim for the accumulated fines related to the flower bed.

3. Because the award of attorney fees was based, at least in part, on the imposition of the fines, the fee award must also be reversed.

*Judgment reversed. McFadden, P. J., and Markle, J., concur.*

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 20, 2019**

# In the Court of Appeals of Georgia

A18A2121. ABDULLAH v. WINSLOW AT EAGLE'S LANDING
   HOMEOWNERS ASSOCIATION, INC.

RICKMAN, Judge.

Askia K. Abdullah filed suit seeking a declaration that his homeowners' association ("the association") did not have the right to fine him for failing to seek prior approval to establish a flower bed on his property. The association counterclaimed for charges accumulated by Abdullah, including initiation fees, assessments, fines of $100 per week arising from the flower bed issue, and attorney fees. Eventually, the trial court denied Abdullah's request for a declaratory judgment and granted summary judgment in favor of the association. Abudullah appeals, contending that the superior court erred by granting summary judgment and awarding attorney fees. For the reasons shown below, we reverse.

Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." (Citations and punctuation omitted.) *Smith v. Found*, 343 Ga. App. 816, 817 (806 SE2d 287) (2017). "The evidence on summary judgment includes the facts alleged in [Abdullah's] verified complaint that are within [his] personal knowledge." *Zhong v. PNC Bank*, 345 Ga. App. 135, 145 (3) (b) (i), n. 3 (812 SE2d 514) (2018).

So construed the evidence of record shows that in July 2014, Abdullah purchased residential real estate in Winslow at Eagle's Landing and that his ownership and use of the property was governed by the association under a declaration of covenants and restrictions ("the declaration"). Prior to August 1, 2016, Abdullah received a letter from the association concerning the lack of grass on some portion of his property. He responded that the area was not conducive to grass because of an extensive root system, and he therefore built a "flower bed and filled it with soil that would accommodate plant growth." He urged the association to intervene if they saw fit:

> There is no other way anything will grow in that area. I urge you to come out and examine the area. And, if you can grow grass in the area I will gladly remove the flower bed. I am also open to any other suggestion you may have.

Abdullah admits that he did not seek the approval from the association before establishing the flower bed.

Abdullah did not receive a response to his letter. Instead, in early August 2016, the association began to assess Abdullah $100 per week for failure to obtain prior approval for installation of the flower bed. In December, Abdullah submitted to the association a proper request for approval of the flower bed, and the association approved it on December 30, 2016. Nevertheless, the association thereafter sought to recover the accumulated weekly fines for a violation entitled "Unapproved Home Improvement . . . for unapproved landscaping for flower bed."

Abdullah then filed this declaratory judgment action, seeking an order declaring that the $100 payments were void as being contrary to the declaration and, therefore, arbitrary and capricious. The association answered and counterclaimed for all unpaid "initiation fees, assessments and other charges" owed by Abdullah as well as attorney fees incurred in collecting the unpaid charges. As stated above, the trial court denied Abdullah's motion for a declaration that the fines were void, and it granted the

association's motion for summary judgment in the full amount of its claims and attorney fees authorized by the declaration. In sum, the trial court granted judgment in favor of the association in the following amounts: principal of $2,570; interest of $30; and attorney fees of $1,971.45.

1. As a preliminary matter, the association contends that we do not have jurisdiction for this appeal because Abdullah filed a direct appeal whereas a discretionary application was required given that the superior court awarded the association less than $10,000.

OCGA § 5-6-34 (a) provides for appeals from "[a]ll final judgments . . . except as provided in Code Section 5-6-35[,]" such as OCGA § 5-6-35 (a) (6), which requires an application for appeal in "*all actions for damages* in which the judgment is $10,000.00 or less." (Emphasis supplied.) The question presented is whether Abdullah was entitled to a direct appeal given that the trial court dismissed his declaratory judgment in full even though it also awarded the association damages of less than $10,000.

The answer is controlled adversely to the association by *Brown v. Assocs. Fin. Svcs. Corp.*, 255 Ga. 457 (339 SE2d 590) (1986), and *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391 (469 SE2d 469) (1996). Both cases conclude that where the original

4

action is not one for damages, OCGA § 5-6-35 (a) (6) does not apply. See *Brown*, 255 Ga. at 457 (OCGA § 5-6-35 (a) (6) does not apply to a judgment where "the action and judgment are for a grant of possession and not an action or a judgment for damages"); *Kelly*, 220 Ga. App. at 391 (even though amount of trial court's award was less than $10,000, "an action on a lien is not an action for damages necessitating a discretionary appeal under OCGA § 5-6-35 (a) (6)"); see also *Anderson v. Laureano*, 342 Ga. App. 888, 888 (805 SE2d 636) (2017). Thus, here, where Abdullah's action was for declaratory judgment, not damages, OCGA § 5-6-35 (a) (6) does not apply, and Abdullah had a right to a direct appeal from a final judgment.

2. Abdullah contends the trial court erred by granting summary judgment in favor of the association because the declaration of covenants did not authorize fines under the circumstances. A declaration of covenants is a contract and we therefore apply the normal rules of contract construction de novo. *Homelife on Glynco, LLC v. Gateway Ctr. Commercial Assn.*, 348 Ga. App. 97(1) (819 SE2d 723) (2018). Under those rules,

> The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. To determine the intent of the parties, all the contract terms must be considered together in

5

arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. When the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation the language used must be afforded its literal meaning and plain ordinary words given their usual significance.

(Citation and punctuation omitted.) *Crabapple Lake Parc Community Assn. v. Circeo*, 325 Ga. App. 101, 104-105 (1) (a) (751 SE2d 866) (2013); see also *S-D RIRA, LLC v. Outback Property Owners' Assn.*, 330 Ga. App. 442, 453 (3) (c) (765 SE2d 498) (2014) ("If the manifest intent of the parties can be ascertained from the covenants as a whole, no ambiguity exists, and there is no need for judicial construction.") (citation and punctuation omitted).

Several provisions of the declaration are relevant. First, the parties agree that Abdullah violated Article V § 3 (A), which provides that "[p]rior written approval of the committee is required before construction commences on any building, structure or other improvement on all Lots and other portions of the Properties."[1]

---

[1] "Improvements" are defined as including "construction of any kind," including "hedges" and "mass plantings." Furthermore, landscaping plans must also be approved by association. And Abdullah conceded below that the flower bed constituted an improvement under the declaration, and he admitted that he did not obtain approval in advance.

Article XII of the declaration provides that each owner agrees to pay the association annual assessments, special assessments, and "specific assessments . . . which are established pursuant to the terms of this Declaration, including but not limited to, *reasonable fines as may be imposed in accordance with the terms of this Declaration*." (Emphasis supplied.) All such charges "shall be a charge and a continuing lien upon" the relevant owner's lot. And Article VII of the declaration provides for enforcement of all covenants in the declaration, including any liens created thereby:

> Enforcement of these Protective Covenants shall be by any proceeding at law or in equity against any person or persons violating or attempting to violate any covenant or restriction, either to restrain or to recover damages, and against the land to enforce any lien created by the covenants.

Finally, reasonable attorney fees are authorized in any proceeding by the association "to enforce or restrain the violation" of the covenants.

Abdullah's primary argument is that contrary to the declaration's authorization of reasonable fines "as may be imposed in accordance with the terms of this Declaration," the declaration in fact imposes no fines. Indeed, Article V of the declaration, which includes the covenant that Abdullah violated, itemizes eight other

7

covenants regarding buildings, structures, and other improvements, and numerous other covenants that pertain to building setback lines, governmental rules, temporary structures, utility connections and television antennas, landscaping, trees and other vegetation, air conditioning compressors and other mechanical equipment, and mail boxes.

In only two out of approximately twenty-seven such covenants does the covenant itself provide for any penalty or other action by the association in the event of a violation. Specifically, the covenants for landscape installation and landscape maintenance both provide that in the event that installation or maintenance of landscaping is not completed in a specified timely manner, the association has the right to enter upon the property of an owner, install or maintain the landscaping, and charge the owner for the relevant costs plus an overhead allowance. Neither those two covenants nor any of the other restrictive covenants mentioned above imposes fines at all. We therefore conclude that the association has failed to establish as a matter of law that the fines imposed against Abdullah were imposed in accordance with the terms of the declaration.

In response, the association cites *Spratt v. Henderson Mill Condo. Assn.*, 224 Ga. App. 761, 764 (2) (481 SE2d 879) (1997), but that case primarily decided that an

association's fine was "neither a liquidated damages award nor an unenforceable penalty." And it found that the declaration in that case specifically provided that the board was authorized "to make and enforce reasonable rules and regulations and to fine, in accordance with the Declaration and By–Laws, in order to enforce the [leasing restrictions at issue]." See Id. The Court, however, did not explain whether the board in fact made rules and regulations pursuant to that authority or discuss or determine whether the relevant fines were established "in accordance with the Declaration and By-Laws." Id. Furthermore, in that case, this Court noted that the lot owner had been made aware of the $25 per day fine before she signed the lease. Id. Here, there is no evidence that the association implemented any rules or regulations or informed the lot owners, let alone Abdullah, of its practice of imposing $100-per-week fines, and there is certainly nothing in the declaration about it. And the simple fact that the association has a ten-year practice of levying fines against all owners at the rate of $100 per week per covenant violation does not mean that such fines were properly implemented.

Moreover, the development in this case is governed by the Georgia Property Owners' Association Act, and the applicable Code section of that act provides that "[i]f and to the extent provided in the instrument, the association shall be empowered to impose and assess fines." OCGA § 44-3-223. Again, the relevant declaration does not

9

specifically impose any fines or provide for "the extent" to which such fines can be imposed. The same Code section provides that lot owners "shall comply with any reasonable rules or regulations adopted by the association pursuant to the instrument which have been provided to the lot owners and with the lawful provisions of the bylaws of the association." Id. But here, no such rules, regulations, or by-laws are in the record, nor has it been shown that any such items were provided to the lot owners. Finally, without any indication of what fines apply to what violations and whether even the most insignificant violation of the covenants can result in a weekly $100 fine, we are unable to assess "whether the exercise of [] authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious." *Saunders v. Thorn Woode Partnership L.P.*, 265 Ga. 703, 704 (2) (462 SE2d 135) (1995).

In short, based on the limited evidence in the record, we conclude that the association's practice of imposing a $100-per-week fine for Abdullah's failure to obtain pre-approval of his flower bed is not supported by the terms of the declaration nor in compliance with OCGA § 43-3-223. The trial court therefore erred by granting summary judgment to the association on its claim for the accumulated fines related to the flower bed.

10

3. Because the award of attorney fees was based, at least in part, on the imposition of the fines, the fee award must also be reversed.

*Judgment reversed. McFadden, P. J., and Markle, J., concur.*

March 20, 2019

ON MOTION FOR RECONSIDERATION

In its motion for reconsideration, the association asserts for the first time in this Court or below, that Article 16 of the declaration gave it the authority to impose fines. Essentially, the association argues that we should affirm based on the trial court having been "right for any reason." But that doctrine is applicable only to arguments that have been raised in the trial court. See *Anderson v. Jones*, 323 Ga. App. 311, 312 n. 2 (745 SE2d 787) (2013) ("[A] grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond."); see also *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002). Here, the association never mentioned Article 16 in the trial court, and the trial court incorrectly relied on Article 12 as urged by the association.

The association also argues incorrectly that our decision suggests that the law requires that each separate covenant in a declaration include all enforcement remedies, or that an association is required to implement rules or regulations to impose fines. Rather, we simply stated the many ways that the association had failed to show authority to impose fines.

12