## A04A1331. SECURITY UNION TITLE INSURANCE COMPANY et al. v. RC ACRES, INC.

(604 SE2d 547)

ELDRIDGE, Judge.

Security Union Title Insurance Company, and Chicago Title Insurance Company, as successors to Safeco Title Insurance Company, brought this appeal from the denial of its summary judgment motions against RC Acres, Inc., the title policyholder, and the grant of partial summary judgment for RC Acres, Inc. against it. The title policy excluded preexisting defects or encumbrances, i.e., a recorded easement, and required that all claims be filed within 90 days from determining that there was a loss or damages. Considering the issues de novo, we reverse.

By a Judgment on a Declaration of Taking, on January 22, 1960, the United States of America recorded a slack water flowage easement to Tract X-2410-E, Buford Dam Downstream Area, recorded in Deed Book 38, page 4, Forsyth County Superior Court Deed Records, which included the subject property. The property at issue is part of Tract X-2410-E, Buford Dam Downstream Area, and is subject to the flowage easement.

On November 9, 1984, the Rives Corporation had a survey prepared for it by B. Lamar Floyd, registered surveyor, which included this property. On December 14, 1984, the Rives Corporation Survey was filed and recorded in Plat Book 21, page 225, Forsyth County Superior Court Deed Records. On May 6, 1985, Floyd revised the Rives Corporation Survey to designate the property at issue as Tract Two and to show the flowage easement on the survey, and such revised survey was recorded in Forsyth County Superior Court Deed Records.

Helen K. Liggett is the mother-in-law of Tommy Friedman, president of RC Acres. On September 25, 1985, the Rives Corporation conveyed to Liggett the property for $105,000 by limited warranty deed, which incorporated the recorded survey specifically and which required the inclusion of the survey because the limited warranty deed contained no metes and bounds in the legal description.

Previously, on May 30, 1985, Liggett had entered into a contract to sell the property to RC Acres for $155,000. On September 25, 1985, after she received the conveyance, Liggett conveyed by limited warranty deed the property to RC Acres, which deed specifically referenced the survey, and on September 27, 1985, the deed was recorded in Deed Book 305, page 472, Forsyth County Superior Court Deed Records.

All the limited warranty deeds describe the property as:

> . . . being a 21.08 acre tract designated as Tract-2 according to survey for the Rives Corporation by B. Lamar Floyd, RLS no. 2087, dated November 9, 1984 and revised May 6, 1985 to show tracts 1 and 2. (Tract above described being the rear portion of a 81.02 acre tract as shown in Plat Book 21, Page 225, Floyd County Records.)

On September 27, 1985, Safeco Title Insurance Company issued to RC Acres Title Policy No. OP-000060. This title policy specifically excluded from coverage:

> The following matters are expressly excluded from the coverage of this policy:
>
> 3. Defects, liens, encumbrances, adverse claims and other matters . . . (c) resulting in no loss or damage to the insured claimant.

The title policy had as a special stipulation:

> [A] statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within 90 days after such loss or damage shall have been determined and no right of action shall accrue to an insured claimant until 30 days after such statement shall have been furnished. Failure to furnish such statement of loss or damage shall terminate any liability of the Company under this policy as to such loss or damage.

On February 27, 2002, over 15 years later, RC Acres made a demand for policy limits of $155,000 under the title policy over the recorded flowage easement, which was shown in the revised and recorded survey at the time of purchase of the property. On July 26, 2002, RC Acres filed its complaint on the title policy. On June 26, 2003, the insurers filed motions for summary judgment. On July 23, 2003, RC Acres filed its cross-motion for partial summary judgment. On February 6, 2004, after the hearing, the trial court denied the insurers' motions for summary judgment and granted RC Acres' motion for partial summary judgment.

1. Security Union contends that the trial court erred in denying its motions for summary judgment and in granting RC Acres' cross-motion for partial summary judgment because RC Acres suffered no loss or damage under the title policy. We agree.

The recording of a deed gives constructive notice of the ownership of the legally described property and any encumbrances to the property. *Gardner v. Granniss*, 57 Ga. 539, 557 (10) (1876) (unrecorded deed). "[W]hen a deed is well recorded, everyone must be presumed to know of the record, for certain purposes." Id. at 557; see also *Williams v. Smith*, 128 Ga. 306, 314 (1) (57 SE 801) (1907) (unrecorded deeds). A properly recorded deed gives notice of such ownership rights and encumbrances whether or not the subsequent purchaser knows of the record. *McElwaney v. MacDiarmid*, 131 Ga. 97 (62 SE 20) (1908) (easement created in a recorded deed gave constructive notice of its existence). When an easement is properly recorded of public record, the world has constructive notice of such easement whether or not they have actual notice. OCGA § 15-6-67 (b) (4) (F); *Chatham v. Bradford*, 50 Ga. 327 (1873); *McElwaney v. MacDiarmid*, supra at 97. When a grantee receives title to land that has a survey plat that is recorded, showing an existing recorded easement, such grantee takes title subject to such easement. *Spencer v. Poole*, 207 Ga. 155 (60 SE2d 371) (1950) (a survey incorporated by reference in a deed gives constructive notice of easements and restrictions shown in the survey); see also *Reidling v. Holcomb*, 225 Ga. App. 229 (483 SE2d 624) (1997) ("When a deed incorporates a recorded plat by reference as the legal description, such incorporated plat has the effect as if it were written out in the deed.").

> The recorded easement document in their chain of title provided notice to them of the express terms of the easement granted to the [United States of America] to operate and maintain [a flowage easement], which provided that they could not use the land in a manner inconsistent with the [USA's] full use and enjoyment of the [flowage] easement.

*State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 435 (555 SE2d 800) (2001). When title is conveyed by a limited warranty deed subject to known easements, encumbrances, or defects, there is no breach of warranty of title, because the grantee received what it bargained for in the bundle of rights to the land conveyed by limited warranty deed. See *Hood v. Spruill*, 242 Ga. App. 44, 45 (1) (a) (528 SE2d 565) (2000) (the recorded deed and recorded survey identified a preexisting easement, which limited what the grantee conveyed).

Any sort of notice, either actual or constructive, is sufficient as notice. *Wyatt v. Elam*, 23 Ga. 201 (1857) (possession is some notice of the existence of an unrecorded deed). "Any circumstance which would place a [person] of ordinary prudence fully on [his or her] guard, and

induce serious injury, is sufficient to constitute notice of [an encumbrance or defect in title to the property]." *Price v. Watts*, 223 Ga. 805, 806 (2) (158 SE2d 406) (1967) (notice of a recorded deed to secure debt).

When a limited warranty deed conveys title with the description of the land incorporated by reference from a recorded survey plat, any encumbrance, easement, or other defect shown on the survey is part of the limited warranty of title. OCGA §§ 44-2-26; 44-2-28; 44-2-29; *Hood v. Spruill*, supra at 45. The incorporated by reference recorded survey plat that furnishes the metes and bounds as the legal description of the property in the limited warranty deed evidences the actual knowledge of the grantee, because any grantee will look at and examine a recorded survey that is the only legal description of what is being conveyed. Further, such recorded survey, that provides the legal description in a limited warranty deed, evidences and limits what is conveyed to what is shown in the survey.

> [T]he liability of an insurer under a title insurance policy is for loss or damage by reason of defects in the title to the property or by reason of liens or encumbrances thereon. The coverage of title insurance extends to reasonably anticipated implications of ownership which attach to the insured by reason of the record, but does not extend beyond that point.

(Citation and punctuation omitted.) *U. S. Life Title Ins. Co. v. Hutsell*, 164 Ga. App. 443, 445 (1) (296 SE2d 760) (1982); see also *Chicago Title Ins. Co. v. Investguard*, 215 Ga. App. 121, 122 (1) (449 SE2d 681) (1994).

Liggett received by limited warranty deed from the Rives Company 21.08 acres subject to an easement. In turn, Liggett conveyed away by limited warranty deed 21.08 acres subject to an easement to RC Acres. The title policy insured RC Acres for marketable title to what it was conveyed by limited warranty deed, which was 21.08 acres subject to the recorded flowage easement. The title policy did not insure RC Acres for 21.08 acres unencumbered by a recorded flowage easement. Thus, RC Acres had no economic loss from the recorded flowage easement, because the fair market value of the purchase price already reflected the encumbrance of the easement in the price willingly paid by it.

Since there was a specific exclusion of all preexisting encumbrances and since RC Acres suffered no economic loss, then the trial court erred in not granting summary judgment against RC Acres' claim and in granting RC Acres' claim for partial summary judgment against Security Union.

2. The insurers contend that the trial court erred in denying its motions for summary judgment and in granting RC Acres' motion for partial summary judgment, because RC Acres gave notice of its loss more than 90 days from the determination of loss or damage. We agree.

"A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money." (Citations and punctuation omitted.) *Ardex, Ltd. v. Brighton Homes,* 206 Ga. App. 606, 608 (2) (426 SE2d 200) (1992); see also *Chicago Title Ins. Co. v. Investguard,* supra at 122 (1).

If an easement comes within the policy as the basis of damages, then such injury occurs at the time of the conveyance, because the measure of damages "is the difference between the value of the property when purchased with the encumbrance or encroachment thereon, and the value of the property as it would have been if there had been no such encumbrance or encroachment." *Beaullieu v. Atlanta Title & Trust Co.,* 60 Ga. App. 400, 404 (4 SE2d 78) (1939). Thus, the injury occurred at the time of purchase, and the claim was not made within 90 days of such occurrence, taking the claim outside the title policy.

*Judgment reversed. Ruffin, P. J., and Adams, J., concur.*

DECIDED AUGUST 10, 2004 —
RECONSIDERATION DENIED AUGUST 31, 2004 — 

*Heyman & Sizemore, William B. Brown, Jacqueline Marcucci,* for appellants.
*Stewart, Melvin & Frost, Frank Armstrong III,* for appellee.