A08A2438. DeSARNO et al. v. JAM GOLF MANAGEMENT, LLC et al.
(670 SE2d 889)

BLACKBURN, Presiding Judge.

In this nuisance and trespass action, James and Susan DeSarno sued the owner and operators of a golf course for injunctive relief and damages arising out of numerous errant golf balls (originating from defendants' adjacent golf course) striking their residence. Finding that their residence was subject to an express easement allowing the golf balls, the trial court granted summary judgment to the defendants, which the DeSarnos appeal. Because we agree with the trial court that the express easement precluded the DeSarnos' action, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a denial of summary judgment. *Matjoulis*

*v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that in 1999, the owner of a large tract of land (which the owner intended to develop into residential lots) agreed to subject those lots to an easement in favor of adjacent property being developed as a golf course. The written and recorded easement permitted as to each lot "golf balls unintentionally to come upon the Lot . . . , and for Golfers at reasonable times and in a reasonable manner to come upon the exterior portions of a Lot . . . to retrieve errant golf balls." The easement also provided that "[u]nder no circumstances shall the . . . Golf Course Owner . . . be held liable for any damage or injury resulting from errant golf balls or the exercise of these easements." The easement did not, however, "relieve golfers of liability for damage caused by errant golf balls."

The golf course was completed in 1999 and began operating. In 2003, the DeSarnos contemplated purchasing an undeveloped residential lot adjacent to the fairway of the ninth hole of the golf course. They were not only aware of the golf course but considered its presence an amenity, as they liked the view of the golf course and as the husband himself was a golfer. They were aware of the golf ball easement and anticipated that some errant golf balls would come onto their lot. Indeed, the husband expected that drives from the tee of the ninth hole would be about even with his lot, and that sliced drives would hit the to-be-developed home.[2] They consulted with no one from the golf course about their anticipated purchase. They purchased the lot, receiving a deed that expressly stated the conveyance was subject to all easements of record affecting the lot.

The DeSarnos had a home built on the lot and began residing in the home in September 2003. For a period of time, the husband became a member of the golf course and played the course some 15 to 20 times. As time went on, the golf course's business increased dramatically until about 30,000 rounds of golf were played each year, resulting in the number of errant golf balls increasing such that the DeSarnos were receiving about ten to fifteen errant balls into their yard each day. Over two and a half years, they experienced twenty-three broken windows, twenty-six chips or breaks on the siding of their house, two dents in their truck, broken outside lights, and several near misses with their children. For safety reasons, the children were not allowed to play in the yard.

The DeSarnos sued the operator of the golf course (Jam Golf Management, LLC), the owner of the golf course (Chuck Clancy Golf,

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] Slicing by right-handed golfers is a long tradition of the sport. "The root of this evil is the propensity to hit the ball with [the] club face that is open at impact, usually from the outside in." *Patton v. The Westwood Country Club Co.*, 247 NE2d 761, 763 (Ohio App. 1969).

LLC), the trade name[3] under which the owner and operator did business (Creekside Golf & Country Club), and the general manager of the owner of the golf course (Jeffery Clancy, both individually and as manager), asserting against all defendants jointly claims of trespass and nuisance arising from the errant golf balls coming onto the DeSarnos' property.[4] All of these entities were separate from the entity that sold the DeSarnos their lot. The DeSarnos sought to enjoin play on the ninth hole and further sought to recover for the damage to their property. The trial court entered summary judgment in favor of the defendants, giving rise to this appeal.

The key to this case is the express easement. Without addressing the other defenses asserted in the court below (such as "coming to the nuisance" and assumption of risk[5]), we hold that because the easement in this case explicitly permitted the complained-of conduct and indeed exonerated the golf course owner from any liability for damages caused by the errant golf balls, no claim for trespass or nuisance could be maintained. An express easement permitting conduct that would otherwise constitute trespass or nuisance precludes such claims by the owner of the servient estate against the owner or legal occupant of the dominant estate for engaging in such conduct. See *Segars v. City of Cornelia.*[6] As the easement here was properly recorded and clearly burdened the DeSarnos' property, it was constructive notice to the world. See *Security Union Title Ins. Co. v. RC Acres, Inc.*[7] In any case, the DeSarnos had actual notice of the easement. Thus, they bought the property with full knowledge of the easement and took the property subject to it.

Citing *Nussbaum v. Lacopo*[8] (homeowners on golf courses "must accept the occasional, concomitant annoyances") and other foreign cases, the DeSarnos nevertheless argue that the extremely large number of errant golf balls coming onto their property constituted an "excessive use" of the easement (and therefore a nuisance), in that the number increased dramatically over time from an occasional ball now and then to the current constant barrage. However, in not

---

[3] A trade name, of course, is not an entity separate from the entity that uses the trade name. Here there was undisputed testimony that the owner and operator of the golf course used the trade name and that no separate club or entity existed that was composed of the individual golfers who used the course.

[4] The DeSarnos conceded that the golf balls were all errant and that no one was intentionally hitting golf balls onto their property.

[5] For a synopsis of the "golf ball" cases relating to these defenses, see *Ellery v. The Ridge Club*, 2005 Ohio App. LEXIS 1782 (Ohio App. 2005). See also *Rose v. Morris*, 97 Ga. App. 764, 768 (104 SE2d 485) (1958).

[6] *Segars v. City of Cornelia*, 60 Ga. App. 457, 461 (9) (4 SE2d 60) (1939).

[7] *Security Union Title Ins. Co. v. RC Acres, Inc.*, 269 Ga. App. 359, 361 (1) (604 SE2d 547) (2004).

[8] *Nussbaum v. Lacopo*, 265 NE2d 762, 765 (N.Y. 1970).

one of these foreign cases cited by the DeSarnos was the court faced with an easement expressly permitting errant golf balls onto the plaintiff's property. See, e.g., id.; *Curran v. Green Hills Country Club*;[9] *Fenton v. Quaboag Country Club*;[10] *Mish v. Elks Country Club*;[11] *Sans v. Ramsey Golf & Country Club*.[12] Moreover, the concept of "excessive use" of an easement relates not to the number of times an easement is used but rather to a use of the easement that exceeds the scope of the easement or that is intended to benefit a property that is not the dominant estate. See *People ex rel. Dept. of Public Works v. Younger*[13] ("[u]se of an appurtenant easement for the benefit of any property other than the dominant tenement is a violation of the easement because it is an excessive use") (punctuation omitted); *Phillips Natural Gas Co. v. Cardiff*[14] ("[w]hen the instrument in unambiguous language limits the use to the carrying of crude oil by a 30-inch pipe, then that is the extent of the use, and any other use is excessive and beyond the scope of the easement"); *Reed v. A. C. McLoon & Co.*[15] (easement to maintain gasoline storage tank was subjected to "excessive use" when defendant used the tank for kerosene storage); *Z. A. Sneeden's Sons, Inc. v. ZP No. 116, LLC*[16] ("[i]f the easement holder makes an unwarranted use of the land in excess of the easement rights held, such use will constitute an excessive use and may be enjoined") (punctuation omitted).

So long as there is no limit set forth in the easement, a dominant estate may use an express easement an ever increasing or larger number of times without fear of liability to the servient estate. See *Hill-Creek Acres Assn. v. Tomerlin*[17] ("no unlawful burden is placed on a servient estate by increasing the volume of traffic on an unlimited easement"). "Cases involving a change in the character of the easement are, therefore, distinguished from those involving merely an increase in usage of the easement." *Blalock v. Conzelman*.[18] See *Karches v. Adolph Investment Corp.*[19] ("[t]he change in usage here involved is one of degree rather than character. We can

---

[9] *Curran v. Green Hills Country Club*, 101 Cal. Rptr. 158 (Cal. App. 1972).

[10] *Fenton v. Quaboag County Club*, 233 NE2d 216 (Mass. 1968).

[11] *Mish v. Elks Country Club*, 35 Pa. D. & C. 3d 435 (Pa. Common Pleas Ct. 1983).

[12] *Sans v. Ramsey Golf & Country Club*, 149 A2d 599 (N.J. 1959).

[13] *People ex rel. Dept. of Public Works v. Younger*, 86 Cal. Rptr. 237, 241 (II) (Cal. App. 1970).

[14] *Phillips Natural Gas Co. v. Cardiff*, 823 SW2d 314, 317 (Tex. App. 1991).

[15] *Reed v. A. C. McLoon & Co.*, 311 A2d 548, 552 (Me. 1973).

[16] *Z. A. Sneeden's Sons, Inc. v. ZP No. 116, LLC*, 660 SE2d 204, 211 (VI) (N.C. App. 2008).

[17] *Hill-Creek Acres Assn. v. Tomerlin*, 99 SW3d 521, 526 (Mo. App. 2003).

[18] *Blalock v. Conzelman*, 751 S2d 2, 6 (II) (Ala. 1999).

[19] *Karches v. Adolph Investment Corp.*, 429 SW2d 788, 793 (Mo. App. 1968).

find no . . . case holding an increase in the number of vehicles using an easement granted in general terms for roadway purposes constitutes such an increased burden thereon so as to prevent the contemplated increase. Neither can we conceive of why such should be the law.'').

Because the easement here expressly permitted the complained-of conduct, the trial court did not err in granting summary judgment to the defendants.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED DECEMBER 3, 2008 — 

*Winburn, Lewis & Stolz, Robert J. Grayson,* for appellants.
*Hicks, Casey & Foster, Richard C. Foster, Zachary M. Matthews,* for appellees.