**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A1584.  CRABAPPLE  LAKE  PARC  COMMUNITY
ASSOCIATION, INC. v. CIRCEO et al.

BRANCH, Judge.

Crabapple Lake Parc Community Association, Inc.[1] ("Crabapple" or "the
association") brought a declaratory judgment action against Louis J. Circeo and Janet
G. Lacey – two homeowners in the community – seeking to establish that it is (1)
authorized to construct a pathway and a footbridge on an existing easement that runs
across the Circeo and Lacey properties and (2) authorized to provide all other property
owners in the community access across the easement to the lake and dam located
behind the Circeo and Lacey properties. Following cross motions for summary

---

[1] Crabapple is an incorporated homeowners association in accordance with the
Georgia Property Owners' Association Act, OCGA § 44-3-220 et seq. The association
was previously known as Lake Parc Community Association, Inc. but its name was
changed to the present name in 2006.

judgment, the trial court denied Crabapple's motion and granted summary judgment in favor of Circeo and Lacey. Crabapple appeals and we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The relevant facts in the record are not in dispute. On October 19, 1993, Torrey/Lake Parc, L. P. (the "Declarant" or "developer"), the owner of a tract of land in Roswell to be developed into an approximately 260-lot, residential community of single-family housing, recorded a "Declaration of Protective Covenants" for Crabapple in the property records of Fulton County, thereby subjecting the property to be developed, which initially did not include the lake at issue, to the terms of the Declaration.

In August 1994, pursuant to authority granted by the Declaration, the Declarant conveyed to Crabapple and subjected to the Declaration an additional 7.43 acres of land that include a several acre lake, an earthen dam, and additional land below the

2

dam. The property description in the deed references a plat of a subdivision of the development entitled "Crabapple Lake Unit II" that was recorded in the Fulton County property records (the "Crabapple II plat") at about the same time.[2] The plat shows that the lake is located on one side of the Crabapple II subdivision and it abuts the back of approximately 20 of the lots in the subdivision (the "Lake Lots"). On the Crabapple II plat, on the drawing of the lake near the dam, appear the words "LAKE" and underneath it "Common Area." The property description in the deed together with the Crabapple II plat show that the lake, dam, and the additional area below the dam were all part of the single conveyance of 7.43 acres of land. From the time the Declaration was recorded and therefore at the time of the lake and dam conveyance, Section 6.32 of the Declaration expressly provided that only Lake Lot owners could use the lake:

> Use of the lake, a portion of which is within the Community, is restricted to Owners of Lake Lots. No ice skating, swimming, water skiing or motorized craft shall be permitted on the lake. Fishing by Lake Lot Owners is permitted. . . . No boat may be left over night within twenty-five feet of the high-water mark of the lake.

---

[2] The plat was first recorded on June 17, 1994, and later superceded by a plat recorded on February 16, 1995.

3

The easement at issue in this case is described exclusively on the Crabapple II plat; neither party contends or has shown that the easement is specifically mentioned in any other document associated with the formation of the association. The plat shows an easement labeled "20' Maintenance & Access Esmt." running along the common property line between Lake Lots 58 and 59, with 10 feet of the easement on each property. The dam is located behind these two lots, and the easement runs from a street in the development in front of the two lots to the dam-side property lines for the two lots, which lines are shown as being beyond the 100-year high water mark for the lake and running across the dam itself. Running across the rear of lots 58 and 59, between the high water mark and the back property line of the two lots, is a concrete flume or spillway that is approximately 35' wide and several feet deep. Thus, in order to travel across the relevant easement to get to the top of the dam, one would have to traverse the spillway.

On May 31, 1995, Lacey purchased lot 58; on August 28, 2001, Cicero purchased lot 59. Both the Circeo and Lacey deeds state that they are "subject to all easements and restrictions of record, if any" and both deeds incorporate by reference the Crabapple II plat.

In 2008 and 2009, Crabapple engaged in a project to improve the lake and dam area, including landscaping the dam area and making plans to construct a park on the top of the dam for use by all owners in the development. The plans for further improvement include constructing a wooden footbridge over the easement and over the concrete spillway. On February 26, 2008, following a vote of the membership, Crabapple recorded an amendment for Section 6.32 of the Declaration that purported to open access to the lake to all of the lot owners in the development and to provide for access to the lake "from within an easement in the Community" or "from Common Property[3] adjacent to the Lake." New Section 6.32 provides as follows:

> Permitted use of the Lake *by Owners[4] in the Community* shall be limited only to fishing and boating. . . . No other use of the Lake shall be permitted. . . . *Access to the Lake for permitted use shall be from within an easement in the Community or from Common Property adjacent to the Lake.* The Owner of any Lake Lot may access the Lake from such Lake Lot. . . . No boat may be left overnight on a Lake Lot or Common Property within twenty-five feet of the high water mark of the Lake.

---

[3] "Common Property" is defined in the Declaration as "any and all real and personal property and *easements* and other interests therein, together with the facilities . . . thereon, now or hereafter owned by the Association for the common use and enjoyment of the Owners." (Emphasis supplied).

[4] "Owners" are defined in the Declaration as record owners of fee simple title to any Lot in the development.

(Emphasis supplied).

Prior to beginning work on the park and foot bridge, Crabapple filed this declaratory judgment action. Crabapple contends that it has an easement across the Circeo and Lacey lots that provides it authority to construct a pathway and bridge to access the dam and lake and to allow all Owners in the association to use the areas for recreational purposes. Crabapple primarily argues that based on the name of the easement as shown on the Crabapple II plat, the relevant easement has two functions – maintenance and access – and that, while Crabapple itself requires the easement for maintenance of the dam and lake, the "access" function gives it authority to allow all members of the community to use the easement to access the lake and dam. Cicero and Lacey stress that at the time the easement was created, only Lake Lot owners had authority to use the lake, and therefore the word "access" in the name of the easement cannot be construed as having granted lake and dam access to the full membership of the association. Rather, as held by the trial court, they contend the easement provides for "access by the community for purposes of maintenance." Cicero and Lacey argue that such expanded access (as well as any construction on the easement) is prohibited because it would unreasonably expand the scope and nature of the original easement without their consent.

In response to cross motions for summary judgment, the trial court granted summary judgment in favor of Cicero and Lacey and denied Crabapple's motion. The trial court held that the 20' Maintenance and Access easement came into existence when the lake was accessible only to Lake Lots, that its scope was determined at that time, and that therefore the lake was a "limited common element" and the easement did not authorize general access to the lake via the easement for all members of the association; that the scope of the easement cannot be extended or expanded after the fact; and that a "community document" provides that no structures may be built on a maintenance easement.

1. Crabapple contends the trial court erred in its rulings, primarily by misapplying the rules of contract construction to the various terms of the Declaration that bear on the nature and scope of the relevant easement. Our application of the rules of construction to the relevant documents, however, is de novo. *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005). We will first determine whether one or more of the original Declaration, the Crabapple II plat, or the conveyance of the lake to Crabapple granted to all members of the association access to the lake and dam over the Circeo and Lacey easement prior to the time that Circeo and Lacey purchased their lots. We will then address the effect of the

7

amendment to Section 6.32 of the Declaration together with Crabapple's proposed plans for the easement.

(a) The only specific information available regarding the relevant easement is its name: "20' Maintenance & Access Esmt." We therefore first look to the Declaration to determine whether it provides direction regarding the nature and scope of this easement. The declaration of a homeowner's association is considered a contract, and we therefore apply the normal rules of contract construction to determine the meaning of the terms therein. *Hall v. Town Creek Neighborhood Assoc.*, 320 Ga. App. 897, 899 (740 SE2d 816) (2013); *Southland Dev. Corp. v. Battle*, 272 Ga. App. 211, 213-214 (612 SE2d 12) (2005). See also *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005) (the interpretation of express easements is governed by the normal rules of contract construction). The normal rules of contract construction require us to ascertain the intent of the parties based on the plain language of the agreement as a whole:

> The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. When the language

8

employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation the language used must be afforded its literal meaning and plain ordinary words given their usual significance.

(Citations and punctuation omitted.) *Municipal Elec. Auth.*, 276 Ga. App. at 866 (1). If the instrument contains an ambiguity, courts may look to the surrounding circumstances and consider parole evidence:

An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations. Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Parole evidence may not be considered unless the written instrument is ambiguous.

(Citations and punctuation omitted.) Id. at 866-867 (1). Finally, covenants are to be interpreted "so as to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." *Elite Realty Svcs. v. City of Auburn*, 272 Ga. 195, 197 (528 SE2d 236) (2000).

9

Several provisions of the Declaration bear on the question of whether, at the time the lake was conveyed to Crabapple, all members of the association were authorized to access the lake and dam over the Circeo and Lacey easement. First, Section 11.02 of the Declaration has always provided that "Every Owner of a Lot shall have a right and easement of ingress and egress, use and enjoyment in and to the Common Property which shall be appurtenant to and shall pass with the title to each Lot," subject to certain provisions not applicable here. Second, Section 5.03 of the Declaration shows that when the lake and dam area were transferred to the association, they became Common Property:

> The Declarant may transfer or convey to the Association any personal property and any improved or unimproved real property, leasehold, easement or other property interest. Such conveyance shall be accepted by the Association and the property shall thereafter be Common Property to be maintained by the Association for the benefit of all *or part of* its Members.

(Emphasis supplied). As shown by the highlighted language, however, the Declaration recognizes that some Common Property might benefit only part of the association membership, yet the association still has the responsibility of maintaining that Common Property. Finally, as shown above, at the time that the lake was conveyed

10

to Crabapple, Section 6.32 of the Declaration limited use of the lake to Lake Lot owners.

Considering these terms together in an attempt to uphold the Declaration in whole and in every part, we agree with the trial court that under the plain meaning of the original Declaration, all members of the association were granted access to all "Common Property" with the exception of the lake and dam, whose use was specifically restricted to Lake Lot owners. Although the Declaration generally grants access to the Common Property to all members, Section 6.32 specifies that the use of the lake was restricted, and the specific clause controls:

> If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former.

(Citation and punctuation omitted.) *Central Ga. Elec. Membership Corp. v. Ga. Power Co.*, 217 Ga. 171, 173-174 (121 SE2d 644 (1961). See also *Southern Telecom v. TW Telecom of Ga.*, 321 Ga. App. 110, 116 (4) (741 SE2d 234) (2013) (same). Applying this rule, we conclude that the specific restriction of use of the lake to Lake Lot owners controls over the general grant of access to the Common Property to all members of the association. Thus, the word "access," as found in the name of the

easement on the Crabapple II plat, does not indicate that all members of the association had a right to access the lake and dam area using the Circeo and Lacey easement at the time that the lake was deeded to the association.

On a related point, it is true that "[w]hen a developer sells lots according to a subdivision plat, which has a lake area designated on it, the purchasers [of the lots adjoining the lake] acquire an irrevocable easement in that park, with which the developer may not interfere," *Walker v. Duncan*, 236 Ga. 331 (223 SE2d 675) (1976), and that "where the plat also provides access to the lake from lots not fronting on the water, a similar rule should apply." (Citation and punctuation omitted.) *Higgins v. Odom*, 246 Ga. 309, 310 (271 SE2d 211) (1980), quoting Pindar, Ga. Real Est. Law (2nd ed.) § 6-23, p. 167. The rationale for these rules is that lot purchasers "have given consideration for its enhanced value in the increased price of their lots." (Footnote omitted.) *Patterson v. Powell*, 257 Ga. App. 336, 337 (571 SE2d 400) (2002). Here, however, the terms of the original Declaration expressly provided that only Lake Lot owners could use the lake. Thus, any person purchasing non-Lake Lots at Crabapple Lake Parc prior to 2008 took ownership with express notice that lake use was limited to Lake Lots. Cf. *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565, 566 (2) (397 SE2d 435) (1990) ("Where an easement is granted *without limitations on its use*, the grantee

12

is entitled to avail himself of other reasonable uses which develop over time if such uses significantly relate to the object for which the easement was granted.") (citation omitted; emphasis supplied).

Crabapple contends that our conclusion – that under the original Declaration the members of the association do not have a right of access to the lake over the Circeo and Lacey easement – essentially renders meaningless the word "access" in the name to the easement. Crabapple argues that because the Declaration grants Crabapple maintenance easements across the entire development in order that it might maintain the Common Property, which easements automatically provide Crabapple with the right to access all Common Property, Crabapple itself has no need for an "access" easement. Specifically, Section 11.05 of the Declaration provides Crabapple with an express but undefined "Easement for Maintenance"[5] anywhere in the Community, as determined solely by Crabapple, in order to perform maintenance:

> Declarant hereby expressly reserves a perpetual easement for the benefit
> of the Association across such portions of the Community, determined

---

[5] The Declaration provides for several types of easement, including those captioned as easements for "Encroachment and Overhang," "Use and Enjoyment," "Utilities," "Entry," "Maintenance," and others. The Declaration provides, however, that the captions shall not "be construed as defining, limiting, extending, or otherwise modifying or adding to the particular Article or Section to which they refer."

13

in the sole discretion of the Association, as are necessary to allow for the maintenance required under Section 5.01.[6] Such maintenance shall be performed with a minimum of interference to the quiet enjoyment to Lots, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense.

At the time the Crabapple II plat was recorded, however, the lake was not a part of the Common Property. It is reasonable to conclude that at that time, the Declarant wanted to ensure that Crabapple had both a right to maintain the lake and dam if it were transferred to the association and a right to access the lake and dam if the lake and dam were not transferred to the association. See generally *Gold-Arrow Farms*, 276 Ga. App. at 866 (1) (upholding the contract in whole and every part is preferred). This construction in consistent with and supported by all of the other sections of the Declaration discussed above relative to the meaning of the words "maintenance and access" as found on the Crabapple II plat.

---

[6] Section 5.01 of the Declaration provides that Crabapple is charged with maintaining and keeping the Common Property in good repair, including "all lakes, dams and appurtenant structures. . . located in or serving the Community;" and, as noted above, the definition of Common Property includes easements. The maintenance "shall include, without limitation, maintenance, repair, and replacement." And "Community" refers to all of the real property and interests therein in the entire development.

Crabapple also argues that although the Declaration originally limited use of the lake to Lake Lot owners, the dam and the area below the dam are not labeled as the "Lake" on the Crabapple II plat; they are therefore fully a part of the Common Property of the development as opposed to the lake, and accordingly, all members of the association should have access to dam areas pursuant to Section 11.02 of the Declaration. Crabapple's argument is not supported by the record. The plat shows both the word "LAKE" and underneath it the phrase "Common Area" written within the boundaries of the lake itself. It follows that both designations either apply strictly to the lake or to the lake, the dam, and the additional area combined. If both terms apply strictly to the lake, then the words "Common Area" would not apply to the dam and additional area, which would strongly suggest that the dam and additional area are not part of the Common Property. If both terms apply to the entire area deeded to the association, then the entire area is named "Lake" on the plat, and, accordingly, use of the entire area was restricted to Lake Lot owners by Section 6.32 of the original Declaration.

Finally, even if we were to find an ambiguity in the term "access," as found in the name of the easement or in the original Declaration, regarding the authority of all members of the association to access the lake and dam area over the Circeo and Lacey

15

easement, the surrounding circumstances show that no other member of the association has ever used the easement. See *Municipal Elec. Auth.*, 276 Ga. App. at 866-867 (1) (if instrument contains ambiguity, courts may consider surrounding circumstances and parole evidence). In a sworn response to a discovery request to identify "any and all occasions" that Crabapple had used the subject easement, Crabapple admitted that it "[was] not aware of any occasion that it used the maintenance and access easement for its members' access to the lake." And in an association newsletter sent to all members to explain the 2008 changes, it is stated that "The purpose of this amendment is to give access to the large lake to all homeowners in the Crabapple Lake Parc community. Previously, only lake lot homeowners on the large lake could use this Common Area." In addition, the presence of a 35'-wide spillway crossing the easement between the high water mark and the end of the easement supports the conclusion that general access to the dam area was not allowed. Indeed, the same newsletter asserts that without a walkway across the spillway, "safe access to the dam does not exist at this time." These surrounding circumstances show that prior to 2008, Crabapple never intended to allow access to the lake and dam area for all members of the association over the easement at issue.

16

To summarize, at the time that Circeo and Lacey purchased their lots, the full membership of the association did not have authority to access the lake and dam area via the 20' easement shown on the Crabapple II plat. The purpose of the easement was limited to maintenance of and access to the lake by Crabapple itself.

(b) As shown above, in 2008, Crabapple began improvements to the lake and dam, proposed to build a walkway on the Circeo and Lacey easement over the spillway, and amended Section 6.32 of the Declaration to open access to the lake and dam to all Owners, with access to the lake and dam to be provided "from within an easement in the Community" or "from Common Property adjacent to the Lake." Thus, Crabapple was proposing a change either in the scope of or in the manner, frequency, and intensity of the use of the easement. See generally *Herren v. Mitchell Elec. Membership Corp.*, __ Ga. App. __ (747 SE2d 63) (2013) (certain use of herbicide did not exceed the scope of electric company easement for the construction and maintenance of electric transmission or distribution lines); *Wilann Properties I, LLC v. Ga. Power Co.*, 321 Ga. App. 297, 304 (2) (740 SE2d 386) (2013) (replacing wooden poles with taller, steel-reinforced concrete poles and installing new lines was a permissible change in the manner, frequency, and intensity of the use of the easement). Compare *DeSarno v. Jam Golf Mgmt., LLC*, 295 Ga. App. 70, 73 (670

17

SE2d 889) (2008) ("the concept of 'excessive use' of an easement relates not to the number of times an easement is used but rather to a use of the easement that exceeds the scope of the easement or that is intended to benefit a property that is not the dominant estate.") (citation and footnote omitted).

Pretermitting whether the 2008 amendment to Section 6.32 of the Declaration constitutes an impermissible change in the manner, frequency, and intensity of use of the easement, we hold that the amendment constitutes an impermissible change in the scope or character of the original easement as a matter of law. As we have held, the original purpose of the easement was specifically limited to maintenance of and access to the lake by Crabapple. The 2008 changes fundamentally altered the scope or character to a degree that would interfere unreasonably with Circeo's and Lacey's enjoyment of their own properties. See generally Restatement (Third) of Property (Servitudes) § 4.10 (2000) ("Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment."). Accordingly, the 2008 changes to the scope of the easement cannot be enforced against Circeo and Lacey.

We therefore affirm the trial court's ruling that the full membership of the association does not have the authority to access the lake and dam area via the 20' easement shown on the Crabapple II plat.

2. Crabapple also contends that even if use of the Cicero and Lacey easement is limited to Crabapple, the trial court erred in concluding that Crabapple is prohibited from building a permanent structure on the easement, i.e., the wooden walkway/bridge across the spillway. Crabapple contends that its duty to maintain the Common Property includes the right to build a wooden walkway on the easement. The trial court ruled against Crabapple on this claim. We again look to the Declaration.

Section 12.16 provides that Crabapple "may exercise any right or privilege given to it expressly by this Declaration, the Bylaws, the Articles of Incorporation, any use restriction or rule, and every other right or privilege reasonably to be implied from the existence of any right or privilege given to it therein or reasonably necessary to effectuate any such right or privilege." This provision parallels the applicable law: absent specific limitations, "[t]he grant of an easement impliedly includes the authority to do those things which are reasonably necessary for the enjoyment of the things granted." (Citation omitted.) *Jakobsen*, 260 Ga. at 566 (2); *Parris Properties, LLC v. Nichols*, 305 Ga. App. 734, 742-743 (1) (d) (700 SE2d 848) (2010). See also

19

Restatement (Third) of Property, § 4.10 ("Except as limited by the terms of the servitude . . . the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude."). Thus the Declaration and the relevant law provide that Crabapple has the authority to build on the easement if it is "reasonably necessary" to accomplish the purpose of the easement, which, as we have determined, is access to and maintenance of the lake and dam area by Crabapple, so long as Crabapple does not cause unreasonable damage to Circeo's and Lacey's property or unreasonable interference with Circeo and Lacey's enjoyment of their property.

Circeo and Lacey contend that Section 6.31 of the Declaration prohibits Crabapple from building the bridge. Section 6.31 provides

> No structures of any kind, including, without limitation, decks, fences, storage buildings, docks, or piers shall be constructed in, on or over any wetland or body of water within the Community.

But Circeo and Lacey have not shown that the spillway is considered a "body of water"; and they have not shown that the lake has been designated as a wetland in accordance with the definition of "wetland" as provided in Section 6.31: "Wetland" is defined as "any area labeled as wetlands on a recorded plat of the Community or

20

otherwise designated as wetlands by the Declarant or the Board of Directors." There is, however, an issue of fact regarding what is reasonably necessary for the enjoyment of the maintenance and access easement as construed in this opinion, as well as regarding whether the walkway and bridge would cause unreasonable damage to Circeo's and Lacey's property or unreasonable interference with Circeo and Lacey's enjoyment of their property. We therefore remand the case to the trial court for further proceedings on that issue.

*Judgment affirmed in part, reversed in part and case remanded with direction. Phipps, C. J., and Ellington, P. J., concur.*