**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1438. CHISOLM v. DANFORTH, LLC.

REESE, Judge.

Tuneen Chisolm (the "Appellant") and two other property owners (collectively, the "Owners") filed suit against Danforth, LLC (the "Appellee") and the Owners' homeowners' associations, challenging, inter alia, the validity of assessments levied against them. In this appeal, the Appellant seeks review of an order of the Superior Court of Fulton County, reallocating and directing reimbursement of mediation fees. The Appellant also seeks review of a "final" order entered the same day, which granted the Appellee's motion for summary judgment and declaratory judgment and denied the Owners' motion for partial summary judgment. For the reasons set forth infra, we reverse the "final" order, vacate the mediation costs order, and remand the case for further proceedings not inconsistent with this opinion.

Viewed in the light most favorable to the non-movants in the parties' respective motions for summary judgment,[1] the record shows the following facts.[2] The Owners in this case own lots within the Tapestry subdivision, situated within the master planned community of Le Jardin. In their original complaint, the Owners named as defendants the following three entities: (i) Tapestry at Le Jardin Owners Association,

---

[1] See *Crabapple Lake Parc Community Assn. v. Circeo*, 325 Ga. App. 101 (751 SE2d 866) (2013).

[2] As an initial matter, we note that, other than a one-paragraph "Second Amendment to Answer and Affirmative Defenses[,]" filed in January 2017, the Appellee's answer is not part of the record on appeal. And, although there had been a prior appeal to this court involving the same cause of action, the Appellee failed either to properly request that this Court retain the record in that appeal or to properly object to the record and obtain a ruling from the trial court before transmittal of the record in this appeal. See Case No. A16A0309. In an unreported decision issued in that case on July 12, 2016, we vacated the trial court's dismissal of the Owner's complaint and remanded the case for further proceedings. Under Court of Appeals Rule 42 (a), "[this] Court will maintain the record of an appeal for one year after the remittitur date unless a party asks the Court in writing to maintain the record for an additional six months, and explain why. The requesting party must send an additional request fourteen days before the expiration of each six-month period to avoid the record being destroyed. The Court will not provide any notice that the record is being destroyed other than that contained in the notice of remittitur." Further "[i]f the parties anticipate that the case will return to the Court . . . , the parties must notify the Clerk, in writing, to hold the record in accordance with the requirements in Rule 42 (a)." Court of Appeals Rule 42 (b). See also Court of Appeals Rules 20 (waiver by appellee); 41 (c) (motions to supplement the record).

Inc.,[3] as the homeowners' association pursuant to a declaration of covenants that burdened the individual lots (including the Owners') and common property located within Tapestry; (ii) Le Jardin Community Association, Inc. ("Le Jardin CAI"), as the homeowners' association pursuant to a declaration of covenants that burdened the individual lots (including the Owners') and common property located within the master planned community of Le Jardin; and (iii) the Appellee, as the purported declarant as defined within both declarations of covenants.

The Owners alleged that the Appellee had not validly obtained declarant rights, yet had claimed the unilateral right to appoint the directors of the homeowners' associations; and that, under the Appellee's direction and control, the homeowners' associations had levied assessments and recorded the liens. The Owners claimed, however, that they did not owe the assessments because: the right to levy assessments was vested in the associations' boards of directors; the boards were never duly elected or were otherwise illegally constituted; and in the absence of properly constituted boards, the associations lacked authority to impose the assessments and record the liens at issue.

---

[3] The trial court dismissed Tapestry at Le Jardin Owners Association, Inc., in December 2016, upon consideration of a consent motion to dismiss.

3

The Appellee acquired the property that is the subject of this lawsuit in the early 2000s. Said property is designated as Land Lots 10, 11, 15, 16, 30, and 31 of the Ninth District C, Fulton County, Georgia (hereinafter, the "Property"). The Property is in the "Le Jardin" subdivision and is subject to the Le Jardin subdivision homeowners' association's Declaration of Covenants, Conditions and Restrictions ("Le Jardin Declarations"), which burden the entire Property. Additional neighborhood Declarations, such as that of the Tapestry at Le Jardin ("Tapestry Declarations"), also burden the Owners' lots. These Declarations were recorded on April 13, 2006, and named Le Jardin, LLC, as the "Declarant" under both Declarations.

Section 1.16 of the Declarations define "Declarant" as:

Le Jardin, LLC, a Georgia limited liability company, or any successor, successor-in-title, or assign who holds or takes title to any portion of the [Property] for the purpose of development and/or sale and who is designated as the Declarant in a recorded instrument executed by the immediately preceding Declarant; provided, however, there shall be only one (1) Person entitled to exercise the rights and powers of the "Declarant" hereunder at any time.

4

Le Jardin, LLC, was the owner and developer of the subdivision and, under Section 3.2 of the Declarations, was the sole Class B Member. Under that provision, the Declarant could:

> appoint the members of the Board of Directors until the first to occur of the following: (i) when 100% of the total number of Lots permitted by the Master Plan for the [Property] have certificates of occupancy issued thereon and have been conveyed to Persons other than Declarant or Builders; (ii) December 31, 2020; or (iii) when, in its discretion, the Class "B" Member so determines and voluntarily relinquishes such right. At such time, the Class "B" Membership shall terminate, and the Declarant shall be a Class "A" Member[.[4]]

Between 2005 and 2007, Le Jardin, LLC, took out a number of loans with Fairfield Financial Services ("Fairfield"). The loans were secured by the Property, as described in four recorded Deeds to Secure Debt ("security deeds").

In August 2008, before the development was completed, Le Jardin, LLC, filed a voluntary Chapter 11 petition for bankruptcy relief. With permission of the

---

[4] According to Section 3.2 (b), "[t]he sole Class 'B' Members shall be the Declarant. . . . The Class 'B' Member may appoint the members of the Board of Directors until [the first of three designated events occurs]. At such time, the Class 'B' membership shall terminate, and the Declarant shall be a Class 'A' Member[.]" Section 3.2 (a) provides in part that "Class 'A' Member[s] shall have one (1) equal vote for each Lot in which he or she holds the interest required for membership under Section 3.1[.]"

bankruptcy court, Fairfield foreclosed on the Property in May 2009. Three separate Deeds Under Power of Sale ("foreclosure deeds") were issued in favor of Ridge Road, LLC, and the fourth foreclosure deed was issued in favor of EvaBank. Pursuant to the foreclosure deeds, filed and recorded on May 7, 2009, Ridge Road, LLC, and EvaBank purchased the described land, along with "[a]ll buildings, . . . improvements, . . . fixtures, . . . equipment, . . . and personal property of every kind[,] all easements, . . . all construction or development contracts, . . . tools, . . . and all contracts or [trade name] licenses[.]"

After purchasing two bundles of the Property at the foreclosure sale on "Loan No. 1[,]" Ridge Road, LLC, then quitclaimed the property to First State Bank of Northwest Arkansas ("FSB") in a deed recorded on May 7, 2010. At the same time, "in connection with the sale[,]" Ridge Road, LLC, "as the successor 'Declarant'" under the Declarations, assigned its rights as successor Declarant to FSB. The "Assignment of Declarant's Rights" was also recorded on May 7, 2010.

In June 2012, FSB conveyed the property to Oladapo, who quitclaimed the property to the Appellee in November 2012. Meanwhile, in October 2012, FSB executed and caused to be recorded an "Assignment by Quitclaim of Declarant Rights" directly to the Appellee.

6

EvaBank was the purchaser of property at the May 2009 foreclosure sale held with respect to "Loan No. 2[.]" In June 2013, EvaBank conveyed the property to the Appellee, and, simultaneously executed and recorded an "Assignment by Quit Claim Deed of Declarant's Rights" to the Appellee.

Thus, the Appellee was the ultimate purchaser of two bundles of the Property as the result of the foreclosures on Loan No. 1 and Loan No. 2.

According to the affidavit of Rufus Oladapo, the Appellee's president and sole owner, one of the ultimate purchasers from the other two sales, Sricharan Kantipudi, was a medical doctor who did not own any lots in the Giverny subdivision and had never indicated that he owned Declarant's rights for Le Jardin. Oladapo testified further that the other ultimate purchaser, Le Jardin VCOFI, LLC, did not own any lots for development and/or sale. According to Oladapo, neither the owner of this LLC, nor anyone else associated with it, had ever made any claim to Declarant rights of the Property.

After the Appellee began exercising authority as the sole Class B Member under the Declarations, the Owners filed this action, seeking, inter alia, a declaratory judgment that the Appellee was not the proper successor Declarant of the Property.

7

In their Second Amended Verified Complaint, the Owners alleged that their lots were burdened by the Declarations for both their subdivision, Tapestry Village, and the larger planned community, Le Jardin. The Owners sought, inter alia, a judgment declaring that the Appellee did "not have declarant rights under the Declarations," and, instead, that the Appellee was "merely a Class A lot owner obligated to pay duly authorized and levied assessments . . . and to adhere to the Declarations and Bylaws like any other Class A lot owner[.]" The Owners also sought damages against the Appellee for slander of title and breach of contract, and requested attorney fees and litigation costs pursuant to OCGA § 13-6-11.

The Appellee filed a motion for summary judgment "on its claim that it [was] the owner of the rights as Declarant[,]" and alternatively sought dismissal of the Owners' "Motion for Declaratory Judgment[.]" The Owners filed a motion for partial summary judgment as to two counts of their complaint, seeking final determinations that the Appellee was not the Declarant of the homeowners' associations' Declarations and that the Appellee had breached the Declarations by asserting itself as such.

After a hearing on the summary judgment motions, the trial court entered a final order, concluding:

8

[T]he unambiguous language contained in the Deeds to Secure Debt and foreclosure deeds demonstrate as a matter of law, that all rights that were pledged as collateral were assigned to the purchaser at the foreclosure sale through the foreclosure deeds. Accordingly, Ridge Road, LLC, acquired the Declarant's rights through these written instruments and had the power and authority to subsequently transfer the Declarant's rights to [FSB] who then transferred these Declarant's rights to [the Appellee]. The only competitor for Declarant's rights in the chain of title, Eva Bank, assigned the Declarant's rights to [the Appellee]. Only [the Appellee] can establish a chain of title, from successor Declarant to successor Declarant, evidencing its valid acquisition of Declarant's rights. Only [the Appellee] has the authority to act as Declarant since it is the only entity owning lots for development and/or sale in both Giverny and Tapestry subdivisions as required under the Declarations.

The court thus granted the Appellee's motion and denied the Owners' motion.

In a separate order entered the same day, the trial court ordered the Owners to reimburse the Appellee for 50 percent of the Owners' portion of the mediation expenses. This appeal followed.

"The declaration of a homeowner's association is considered a contract, and we therefore apply the normal rules of contract construction to determine the meaning

9

of the terms therein."[5] "Our application of the rules of construction to the relevant documents . . . is de novo."[6] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. In related arguments, the Appellant contends that the trial court erred in denying her motion for partial summary judgment on her claim for declaratory relief against the Appellee. We agree.

As noted above, Section 1.16 of the Declarations defines "Declarant," in relevant part, as Le Jardin, LLC, "or any successor, successor-in-title, or assign who holds or takes title to any portion of the property . . . for the purpose of development and/or sale *and who is designated by the Declarant* in a recorded instrument executed by the immediately preceding Declarant[.]"[7]

(a) In March 2014, Steve Macauley, as the "[m]anager" of Le Jardin, LLC, executed a quitclaim deed that purported to convey "[a]ll of the Declarant's Rights" to the Appellee and "to release any interest of [Le Jardin, LLC,] in any capacity, if any exists, as Declarant[.]" Macauley testified, however, that his involvement with

---

[5] *Crabapple Lake Parc Community Assn.*, 325 Ga. App. at 104-105 (1) (a).

[6] Id. at 104 (1).

[7] (Emphasis supplied.)

10

Le Jardin, LLC, had ended in 2007, and he could not explain why he had signed a quitclaim deed seven years later on behalf of that entity, after it had been administratively dissolved. Thus, even construed in the light most favorable to the Appellee on the Owners' motion for partial summary judgment, Le Jardin, LLC, did not legally execute the 2014 document that purported to convey the Declarant's rights to the Appellee. Thus, the recording of this instrument did not satisfy Section 1.16 of the Declarations.

(b) Moreover, the security deeds, combined with the 2009 foreclosure deeds, did not designate a successor Declarant under the plain and unambiguous language of the Declarations.[8] Although both the security deeds and the foreclosure deeds described in great detail the collateral being pledged or transferred, there was no mention of the Declarant's rights.

Specifically, in the security deeds, Le Jardin, LLC, pledged "all of the following described land and interests in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances [t]ogether with all the proceeds of all of the foregoing."

---

[8] See *HA&W Capital Partners v. Bhandari*, 346 Ga. App. 598, 603 (2) (a) (816 SE2d 804) (2018) ("A court may not strain to find an ambiguity and must enforce an unambiguous contract as written.") (citation and punctuation omitted).

11

The security deeds then described in detail the land and other physical property. In section (c) of the security deeds, Le Jardin, LLC, further pledged:

> All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Premises or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

Le Jardin, LLC, also pledged all income and rents accruing from the Property, as well as "all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor of, in and to the same[.]" Thus, pretermitting whether the Declarant's rights had to be specifically mentioned in the recorded transfer, nothing in the security deeds' language could be construed to transfer the rights and duties of the Declarant.[9] The security deeds do not even

---

[9] See *Fannie Mae v. Las Colinas Apts.*, 346 Ga. App. 867, 869 (815 SE2d 334) (2018) ("[T]he construction of an unambiguous security deed, like the construction of any other contract, is a question for determination by the court. The cardinal rule

mention that the rights being pledged came with a duty that the Property be held with the "purpose of development and/or sale," as required for a successor Declarant in Section 1.16 of the Declarations.

Moreover, Ridge Road, LLC, and EvaBank could not have jointly exercised the Declarant's rights and performed the duties because, under Section 1.16, there could "be only one (1) Person entitled to exercise the rights and powers of the 'Declarant' . . . at any time." Thus, they could not have later designated a successor Declarant as the "immediately preceding Declarant" under Section 1.16 of the Declarations.

Further, each of the 2009 foreclosure deeds stated that the Property was "given subject to all easements and restrictive covenants and matters of record to which the Security Deed is inferior in terms of priority[.]" The 2006 Declarations included a "Consent of Lender[,]" signed by a representative of Fairfield, which provided, in relevant part:

---

of construction is, of course, to ascertain the intention of the parties, as set out in the language of the contract. In this regard, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.") (punctuation and footnote omitted).

13

[Fairfield] agrees and acknowledges that, upon recordation of the Declaration, the restrictive covenants contained in the Declaration will run with the land which serves as security for the debt evidenced by the Security Deed and further agrees that any foreclosure or enforcement of any other remedy available to [Fairfield] under the Security Deeds will not render void or otherwise impair the validity of the Declaration.

Thus, under their plain and ordinary meaning, the security deeds and foreclosure deeds did not designate the Appellee as successor declarant.

We are not persuaded by the foreign authority relied upon by the Appellee.[10] As discussed above, we must enforce the unambiguous contracts as written.[11]

---

[10] See, e.g., *Bd. of Managers &c. Assn. v. Bank of Ravenswood*, 692 NE2d 402 (Ill. App. Ct. 1998) (construing the relevant statutory and common law definitions of "assignee[,]" "successor[,]" and "developer" as including an entity that purchased the property at a foreclosure sale where the declarations defined "developer" and "declarant" as the original entities and their "successors and assigns," provided that the covenants ran with the property, and stated that the declaration's provisions "shall be liberally construed to effectuate its purpose for creating a uniform plan of operation for a first-class development[ ]").

[11] See *HA&W Capital Partners*, 346 Ga. App. at 603 (2) (a). We note that the Appellate Court of Illinois concluded that its "finding that [the purchaser] is a successor developer . . . has practical as well as legal significance." *Bd. of Managers &c. Assn.*, 692 NE2d at 407 ("If commercial lenders are precluded from acquiring the development rights necessary to complete condominium projects through foreclosure proceedings, the availability of credit will be greatly diminished. Conversely, the cost of such credit will soar as lenders seek to be compensated for the greater risk and potential losses they face when financing these projects. These changes would seriously undermine the construction of new condominium units in Illinois."). These

14

Accordingly, we reverse the denial of the Appellant's motion for partial summary judgment on her claim for declaratory judgment and reverse the grant of the Appellee's motion for summary judgment and declaratory judgment.

2. The Appellant argues that the trial court erred in denying her motion for partial summary judgment on her claim for breach of contract against the Appellee. Specifically, the Appellant contends that the Appellee breached the terms of the Declarations, which bind all lot owners, by unilaterally levying assessments and recording liens against the Appellant's property and by failing to maintain the Appellee's lots.

In light of our conclusion in Division 1, supra, that the Appellant was entitled to declaratory relief because the Appellee was not the proper successor Declarant of the Property, we hold that she was also entitled to partial summary judgment as to the Appellee's liability on her breach-of-contract claim. Thus, we reverse the denial of the Appellant's motion for partial summary judgment.

---

practical implications are not as compelling where, as here, the project was financed and secured by four separate security deeds; the Property was divided and sold by parcels at the foreclosure sales; and the Declarations explicitly stated that there could be only one Declarant at a time.

3. The Appellant contends that the trial court abused its discretion by forcing her to engage in extended settlement discussions, participate in a second court-ordered mediation under threat of sanctions, reserving the right to reallocate mediation fees without specifying any parameters, and arbitrarily ordering the Owners to reimburse the Appellee on no apparent basis other than failure to settle.

In its second amended order requiring mediation, the trial court ordered the Appellee and the then-remaining homeowner's association defendant to pay the mediation costs but reserved the right to reapportion the costs at a later time. The Owners settled with the remaining association, but were unable to reach an agreement with the Appellee. According to the Appellee in its motion for reimbursement of mediation fees, the impasse was caused by the Owners' unwillingness to settle. The trial court summarily granted the Appellee's motion and ordered the Owners to reimburse the Appellee $1,727.50.

In light of our conclusion in Divisions 1 and 2, supra, regarding the merits of the parties' motions for summary judgment, we vacate the trial court's July 16, 2018 order on the Appellee's Motion for Reimbursement of Mediation Fees and remand the case for further proceedings not inconsistent with this opinion.

4. In light of our conclusion in Division 1, supra, we need not reach the Appellant's remaining claims of error.

*Judgment reversed in part and vacated in part, and case remanded. Miller, P. J., and Rickman, J., concur.*